### The Terre Haute and Indianapolis Railroad Company *v.* McKinley.

RAILROAD.—*Unnecessary Injury to Lands.*—*Suit for Damages.*—The charter of a railroad company provided, that "in all cases where the owners of land or stone necessary for the use and construction of said road shall refuse to relinquish the same to the corporation, or shall refuse to accept a fair compensation therefor, it shall be lawful for the corporation, by their president or any superintendent, agent, or engineer employed by them, to enter upon and take possession and use the same, avoiding in all cases unnecessary damage or injury to the owners or proprietors;" and the charter then provided the mode of the assessment and payment of the damages to the land-owner.

*Held,* that the damages to be assessed and paid in the mode prescribed by the charter were those resulting from a construction of the road with care,

skill, and prudence, not only as to the safety of persons and property passing over the road, but also as to the protection and safety of the property holder; and that if by reason of any want of care, skill, or prudence for the protection and safety of the land-owner, his property was unnecessarily damaged in the construction or repairing of the road, he might recover therefor in an action for damages as at common law.

APPEAL from the Putnam Circuit Court.

GREGORY, J.—McKinley sued the railroad company for injury to his lands. A demurrer was sustained to the first paragraph of the complaint. The second paragraph substantially sets up that the defendant is a corporation, organized under the laws of this State, and owns and operates a railroad in the county of Clay, in said State; that the plaintiff is the owner of certain tracts of land in said county of Clay; that there is a stream called Croy's creek running through said lands from north to south, passing through a low and fertile bottom, of one fourth of a mile in width, which said bottom is in cultivation; that in the year 1851, the defendant entered upon and constructed her railroad, over and across said lands, from east to west, crossing said creek at right angles, about the middle of said lands; that the original construction of said road across said bottom and creek was such as not to materially interfere with the flow of said water in its natural channel; that in times of freshets it spread over said bottom, and passed off without any damage; that said works across said bottom and creek so remained until the year 1855, when the defendant, not regarding the rights of the plaintiff, wrongfully and unnecessarily changed the construction of her said road over and across said land and stream, in such a manner as to cause great and unnecessary injury to the lands of plaintiff; that she has, in such wrongful manner, unnecessarily obstructed the natural flow of said stream, by erecting an embankment across said bottom to the height of twenty-five feet, connecting and adjoining up to the abutments of said bridge there erected, of sixty-six feet in width, through which only, the water of said stream is allowed to pass, and by wrongfully and unnecessarily filling up the bed of said

stream at above and below where the water passes between said abutments, to the height of three feet above its natural bed; that, owing to the construction of said embankment, and the filling of the bed of said stream, the water in times of freshets, which occur frequently, cannot pass between said abutments, as it passed off before the construction of the same, gathering a head above said embankment of fifteen feet in depth, and thereby, for the last six years, has destroyed crops of the plaintiff to the value of twenty-five hundred dollars, and injured fences and washed away rails to the value of five hundred dollars; that, owing to the accumulation of water above said embankments as aforesaid, it is wrongfully forced between said abutments with great velocity, and is thereby unnecessarily confined in a narrow channel, and for a long distance, to wit, a half mile, runs through said bottom with much greater rapidity than it would naturally flow, and thereby greatly washes away and injures the soil of said plaintiff, and cuts new channels therein, and washes away the surface, and crops, and fences of plaintiff, and has done so for the last six years, to said plaintiff's damage five thousand dollars. Plaintiff further states, that during the last six years, the defendant has wrongfully and unlawfully thrown large quantities of stones, timber, and other rubbish, on the lands of the plaintiff, and into said stream, which have floated and lodged there on the lands of the plaintiff, where they have formed drifts and obstructions, and caused said creek to wash away the soil of plaintiff, and cut new channels, all of which was to plaintiff's damage five thousand dollars; demanding judgment for said sum.

A demurrer was overruled to this paragraph, and the appellant excepted. This presents the first question in the case.

The answer, as finally amended and sustained by the court, admits that the plaintiff owns the lands; that the defendant constructed and owns the railroad; that, in the original construction thereof, Croy's creek, on the plaintiff's lands, was spanned by trestle work, as also the adjoining

lands out to the high ground; that this wooden trestle work, or construction, was temporary, and to remain until the company could procure the materials for a more permanent construction of the work; that in 1855 she did make said permanent improvement, by putting in stone abutments for the bridge, of the width of sixty-six feet, and filling up the trestle work with earth, so as to make the road more secure for the transportation of freight and passengers; and that the same was done in a skilful and careful manner, without unnecessary damage to the owner; and the plaintiff has his remedy for all damage, if any, under the laws of the State for the assessment of damages in such case made and provided; concluding with a denial of all matters not confessed or confessed and avoided.

Issue was taken on the answer, by the general denial. Trial by jury.

The court charged the jury as follows: "There is no controversy in this suit about the right of the defendant to construct her road over the land, nor about whether in so doing, she, for the purpose of the corporation, carefully, skilfully, and scientifically did so. The questions for the jury to determine are, did the defendant, by the manner in which she built or repaired the road, wrongfully and unnecessarily injure the plaintiff's land, or crops, or fences, or injure him by the timbers floating on to his land? If the jury believe the plaintiff has been so injured, they should find for the plaintiff, and assess his damages for any such injury he may have sustained within six years prior to the 6th day of July, 1866, but for no injury sustained since July 6th, 1866. If the jury do not believe plaintiff has sustained any such damages within the period aforesaid, they should find for the defendant.

"If the jury believe, from the evidence, that the said lands of the plaintiff were overflowed and submerged to a greater extent and depth, and the water longer detained thereon, because of the erection and maintenance of the abutments and embankments named, and if they further

believe, from the evidence, that the defendant could reasonably have avoided the overflow of said lands and detention of said waters to so great an extent, by constructing said work in a different manner; then, as to that point, the plaintiff should recover.

"If the jury find for the plaintiff on the foregoing instructions, the rule by which you should be governed in the assessment of damages is this: he is entitled to the actual damage, caused by said obstructions, which he has sustained to his rights in said lands for six years prior to July 6th, 1866.

"If you believe, from the evidence, that the defendant, by the manner of constructing the abutments and fills complained of, has *unnecessarily* caused the waters of Croy's creek to injure the lands or crops of plaintiff, you should find for the plaintiff, and assess his damages accordingly.

"If, by reason of said abutments and fills, the waters of said stream are, during ordinary freshets, obstructed in their passage, and dammed above said embankments much more than they were before said abutments and fills were made, and said water has to go through a passage but sixty-six feet wide, which greatly accelerates the current below said embankment, and thereby causes serious damage to plaintiff's crops and lands, and said injuries could have been prevented at a reasonable cost, by defendant making a wider passage for the said stream, and the road so constructed would have been as safe and permanent; then the said obstructions were unnecessary, and the plaintiff should recover.

"If you find, from the evidence, that defendant, by her employees or servants, threw parts of old structures or timbers on the lands of the plaintiff, at a place or places where the same would be likely to be floated into said stream, and that any of said timber or rubbish was washed into the channel and obstructed said stream on plaintiff's land, to his damage, you should find for him the amount of damage so sustained by him.

"If the jury find that the works of which plaintiff complains were an obstruction to the free use of his property, so as essentially to interfere with the enjoyment of it, and that said works might have been constructed so as to render the said road safe and permanent, without injury to the plaintiff; then you should find for the plaintiff, and assess his damages accordingly. This instruction is applicable only to so much of defendant's works as may unnecessarily damage the plaintiff's property, if any such there are, and not to others that are of a different character."

To the giving of these instructions the appellant severally excepted.

The defendant asked instructions which were refused by the court, as follows: "1. The plaintiff alleges that the defendant wrongfully and unnecessarily changed the construction of her road over and across the lands of the plaintiff, and Croy's creek, in such a manner as to cause great and unnecessary injury to the lands of the plaintiff, and the defendant denies this allegation, and this is the issue that you are to try and determine.

"2. If you find from the evidence, that the defendant is a corporation organized under the laws of this State, that the defendant by virtue of her charter and for the purpose of constructing her road, entered upon the lands of plaintiff and condemned his land for her road bed, and constructed her road over, through, and across the lands of the plaintiff; in such case the plaintiff had the right, at any time within two years thereafter, to claim from the defendant all the damages that he had sustained by reason of the appropriation of his land for the road bed, and all damages done to the use and occupation of his lands not appropriated; and if the plaintiff has failed to claim his damages in conformity with the statute, he cannot recover such damages in this action; and the same rule obtains in reference to any changes or additions that the defendant has made over and on the lands of the plaintiff.

"3. If you find, from the evidence, that the abutments

and embankments constructed by the defendant, on the land in controversy, were necessary and proper, and constructed with care, prudence, and skill; then you must find for the defendant.

"4. If you find, from the evidence, that the embankments and abutments are necessary to the safety of passengers and property passing over said road, and that it was built, constructed, and erected with care, skill, and prudence, not only as to safety of persons and property passing over the road, but for the protection and safety of the property holder; then you must find for the defendant."

To the refusal to give each of these instructions the appellant excepted.

The defendant requested the court to instruct the jury, if they rendered a general verdict, to find specially upon certain question of fact, which the court refused. The interrogatories are as follows:

"Quest. 1. Is the defendant a corporation organized under the laws of this State?

"Quest. 2. Did the defendant, by virtue of her charter, and to make her road, enter upon the lands owned by plaintiff, appropriate his land for her road bed, and construct her road over, through, and across the lands of the plaintiff?

"Quest. 3. When was such appropriation made? and when was defendant's road made through the lands of the plaintiff?

"Quest. 4. What kind of abutments and bridges were first erected? and were they intended to be permanent or temporary?

"Quest. 5. When were the stone abutments made?

"Quest. 6. Were the stone abutments necessary and proper? and were they constructed with care, prudence, and skill?

"Quest. 7. Was there any trestle work on defendant's road east of the abutments on Croy's creek? and if yes, how far did it extend?

"Quest. 8. Was it safe to transport passengers and freight over the said trestle work, on defendant's road?

"Quest. 9. Was the space covered with trestle filled up with earth? and if yes, when?

"Quest. 10. Was it necessary and proper to fill up the space covered with trestle work with earth? and was it filled with care, prudence, and skill?

Quest. 11. Was it necessary, to protect the abutments from the action of the water, that a rip-rap wall should be placed around the base of the abutments, and that the space between the abutments should be paved? and was such work done with care, prudence, and skill?

Quest. 12. Was there any unnecessary obstruction placed on the plaintiff's premises by the defendant, and complained of by plaintiff in this action? and if so, what was it, and when done?"

And in lieu of the above, the court submitted and required answers to the following interrogatories:

"1. Did the railroad company so construct or repair their road as to unnecessarily injure the plaintiff's land, or crops, or fences?

"2. Did the defendant leave timbers and rubbish lying near the road, so as to be floated down Croy's creek, and that the same was floated on the plaintiff's land below the road, and there formed drifts and caused washes, thereby injuring plaintiff's lands or crops?"

The evidence, which is in the record, tends to show that Croy's creek is a small stream of about twenty feet from bank to bank; that the railroad company in constructing a bridge across it, placed the abutments sixty-six feet apart. The testimony is conflicting as to whether this is sufficient to pass the water in times of ordinary freshets. The jury found for the plaintiff. The appellant moved for a new trial, which motion was overruled.

The road in question was constructed under a special charter passed by the legislature before the adoption of the present constitution. The original act was passed January

26th, 1847. This act was amended February 16th, 1848; and again January 13th, 1849. The improvement complained of was made from 1855 to 1857.

The charter as amended provides, that "in all cases when the owner or owners of land or stone necessary for the use and construction of said road shall refuse to relinquish the same to the corporation, or shall refuse to accept a fair compensation therefor, it shall be lawful for the corporation by their president, or by any superintendent, agent, or engineer employed by them, to enter upon and take possession and use the same, avoiding in all cases unnecessary damage or injury to the owners or proprietors." The act provides the mode for the assessment and payment of the damages to the land-owner.

So far as any damage was likely to result to the land-owner from a proper construction of the road, the remedy was by the mode pointed out by the statute.

The company had an undoubted right to construct her road with reference to its fitness for the purpose for which it was to be used; she had a right to look to the safety of persons and property passing over it. In making a good road, she was to avoid "unnecessary damage or injury to the owners or proprietors."

We hold that the fourth instruction asked by the appellant is a correct exposition of the law, so far as it was applicable to the issues, but the court committed no error in refusing it, for the reason that it was too general.

It is claimed that these interrogatories all answered in favor of the railroad company would not be sufficient to control the general finding.

This turns upon the construction to be given to words used in the interrogatories, "necessary and proper." If these words meant "necessary and proper" in reference, not only to "the safety of passengers and property passing over the road," but also "for the protection and safety of the property holder," then the special finding would have covered the issues; and if against the general finding would have

been controlling. The interrogatories must be construed to apply to the issues and the law of the case.

The jury ought to have been plainly charged, so far as the injury from overflowing the lands of the plaintiff by the construction of the embankment and abutments was conconcerned, that if they found, from the evidence, that the embankments and abutments were necessary to the safety of passengers and property passing over said road, and that it was built, constructed, and erected, with care, skill, and prudence, not only as to safety of persons and property passing over the road, but also for the protection and safety of the property holder, then the finding on that issue should be for the defendant.

With such a charge, the answer to the interrogatories would have covered the entire case.

The court committed no error in overruling the demurrer to the second paragraph of the complaint.

The 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th interrogatories were within the issues, and were controlling in the case, and ought to have been given to the jury.

For this error the court below ought to have granted a new trial.

Judgment reversed, with costs. Cause remanded, with directions to grant a new trial, and for further proceedings.

*D. E. Williamson, A. Daggy,* and *S. H. Buskirk,* for appellant.

*S. Claypool, W. Mack,* and *J. M. Hanna,* for appellee.

NOTE.—This opinion was filed in the November term, 1869; and a petition for a rehearing was overruled in the May term, 1870.