Gagg *et al. v.* Vetter *et al.*

*W. C. L. Taylor* and *E. A. Greenlee*, for appellant.

*J. R. Coffroth* and *T. B. Ward*, for appellees.

---

## GAGG ET AL. *v.* VETTER ET AL.

NEGLIGENCE.—*Damages.*—*Buildings in Cities.*—*Care in Construction of Chimneys, Furnaces, etc.*—Action for the destruction by fire of the plaintiff's factory building, caused by sparks from the brewery of defendant. The grounds on which a recovery was claimed were, first, that the flues, chimneys, and furnaces in defendant's brewery, being near to plaintiff's factory building, were not built in proper shape, or of sufficient height or capacity, thereby causing burning coals, soot, cinders, sparks, and embers to be carried therefrom upon the roof of the factory, whereby it was burned and destroyed; and, second, that defendant was negligent in the use of the furnaces, flues, and chimneys, by making large fires therein, etc., of highly inflammable and dangerous material, so that the sparks, embers, etc., passed from the chimney to the roof of the factory, burning and destroying it.

The defendant's brewery was built in a populous part of a large and rapidly increasing city. The property of the plaintiff, which was destroyed by the fire, was there at the time the brewery was constructed.

*Held*, that this imposed upon the defendant the necessity of exercising a higher degree of care and diligence in the construction and management of his brewery than if it had been located in the country, or in a part of the city where there were no houses in its immediate vicinity; that a mere difference of opinion among men of science and experience, as to the best plan to construct the chimney, furnace, and flues, did not justify the selection of any well supported theory without further inquiry; for the defendant was bound to use all due care and vigilance to ascertain which theory was correct, and which incorrect; and for that purpose he was bound to avail himself of all the discoveries which science and experience had put within his reach; that while the law does not require absolute scientific perfection in the construction of such works, it does require the exercise of a high degree of care and skill to ascertain, as nearly as may be, the best plan for such structures; and it requires that not only skilful and experienced workmen shall be employed in their construction, but that due skill shall be exercised by such workmen in the particular instance; that the defendant was liable in damages to the extent of the injury sustained by the plaintiff, if it was proved upon the trial, either that ordinary care and diligence were not employed in the construction of the chimney, furnaces, and flues, or that he has guilty of negligence in the management thereof, and that the factory building was destroyed from either of these causes.

EVIDENCE.—*Questions of Fact from Scientific Sources before Jury.—Finding. Rule upon Appeal.*—Where a question before a jury is dependent for its solution upon philosophical principles and mechanical skill and judgment, this court on appeal is as much bound to respect the conclusions of the jury as in any other case.

NEGLIGENCE.—*Question of Law and Fact.*—The question of negligence is one of mingled law and fact, to be decided as a question of law by the court, when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed and the evidence is conflicting.

SAME.—*Instruction.*—It was proper for the court, in said action, to admit evidence to prove that smoke, sparks, and flame had been seen coming out of the top of the chimney at other times than on the occasion of the injury complained of, and to instruct the jury that it was proper for them to consider and weigh such evidence, in determining whether the chimney and smoke-stack had been properly constructed.

BILL OF EXCEPTIONS.—*Evidence.— Jury Viewing Premises.*—The fact that the jury were conducted by the bailiff to inspect the premises, chimneys, etc., of defendant's brewery, did not prevent this court from regarding the bill of exceptions as containing all the evidence.

## APPEAL from the Marion Circuit Court.

BUSKIRK, J.—The appellees, who were the plaintiffs below, by their complaint aver, that Anna Vetter was the owner, in her own right, of a certain lot in the city of Indianapolis, on which was erected a frame building, used by her husband as a furniture factory, and in which was a large amount of machinery, tools, fixtures, etc., the whole of the value of ten thousand dollars; that the appellants were in the possession of the lots and premises contiguous to said factory, and did thereon erect buildings, chimneys, furnaces, smokestacks, and other structures, for the purpose of carrying on the business of brewing malt liquors; that appellees were using their said premises as a furniture factory at the time appellants erected their said works for the purposes aforesaid; that appellees' factory was covered with shingles, which appellants at the time well knew; that appellants, in the use of their buildings, furnaces, etc., consumed large quantities of fuel, and kept up large fires; that their said furnaces, flues, and chimneys were so located and built as to endanger the safety of appellees' property while using the same; "that said flues, furnaces, and chimneys of appellants were located and constructed in an insufficient, careless, and negligent manner, not being built of proper shape, nor of sufficient height or capacity, so that when the same were in use by appellants, the burning sparks, soot, coals, embers, and cinders from said furnaces, flues, and chimneys fell around and upon the buildings of appellees, of which appellants had notice; that on the 26th of April, 1867, while the appellants were using their furnaces, flues, and chimneys, and while keeping up and maintaining fires therein and thereunder, they did use, manage, and control the same in a negligent, reckless, and unskilful manner, and did make large fires therein of highly inflammable and dangerous material, so that, by reason of the improper, unskilful, insufficient, and dangerous location and construction of said flues, furnaces, and chimneys, and the careless, negligent, reckless, and unskilful use and management thereof by appellants, burning coals, soot, sparks, embers, and cinders were carried there-

from on to the factory buildings of appellees, so that said buildings, by the said negligence and recklessness of appellants, and without any fault of appellees, were fired and consumed."

Appellants demurred to complaint, and assigned for cause that the same did not state facts sufficient to constitute a good cause of action. Demurrer overruled. Appellants excepted. Answer of appellants, general denial. This cause was tried by jury. Trial of cause commenced January 3d, and concluded January 27th, 1870, when the jury returned a verdict, as follows: "We, the jury, find for the plaintiffs, and assess the damages of the plaintiff Anna Vetter at five thousand two hundred and fifty dollars."

The court, upon its own motion, instructed the jury in writing, as follows:

"1. The plaintiffs bring this suit for damages they allege resulted to the property of the plaintiff Anna Vetter from fire, communicated to it from the chimneys or smoke-stacks of the defendants' brewery, the plaintiffs alleging that from the dangerous location, and careless, defective construction of such chimneys or smoke-stacks, and careless and negligent use of said chimneys and stacks, in having great fires made of highly inflammable and dangerous material in the furnaces leading to said chimneys or smoke-stacks, so that fire was carried from the top of the same to the plaintiff's building, whereby it was set on fire and consumed, without any fault or negligence on the plaintiff's part. The defendants deny these allegations, which puts the plaintiff upon the proof of every material charge in her complaint.

"2. Under the issues in this case, your first inquiry should be, was the building of the plaintiff Anna Vetter set on fire by sparks, coals, soot, embers, or cinders, carried from the chimneys or smoke-stack of the defendants' brewery? If the plaintiffs fail to establish this point, by a fair preponderance of evidence, then, without further consideration, your verdict should be for the defendants. But should this point be established by such preponderance, then you should go

further and inquire, first, whether the fire was caused by the use of a chimney or smoke-stack, or both, which was dangerously located, or negligently, or defectively constructed; or, second, if such chimney or smoke-stack was properly located and constructed, whether the fire was caused by the careless and negligent use by the defendants of such chimney or smoke-stack?

"3. First, then, as I have suggested, you should inquire, was the fire caused by the use of a defectively constructed chimney or smoke-stack, or the furnaces or flues leading to the same, as named in the complaint? In investigating the question of the construction of the chimney or smoke-stack, you may properly take into consideration the action of the stack or chimney as to the delivery of fire or sparks at other times, whether such delivery was occasional or frequent. So, also, you may take into consideration the opinion of experts, persons who have experience in such matters, and also those who have had opportunities of observing the action of the chimney or stack in its ordinary action and operation. The law does not demand absolute scientific perfection in the construction of such works, but only that ordinary degree of skill in such construction which mechanics versed in works of the kind ordinarily used. But such works should be built with reference to the safety of adjoining premises, as well as to the mere convenience of the persons using them, taking into consideration the distance from the chimney to such adjoining premises, the height of the adjoining buildings, and all the other surrounding circumstances. This question of skill in construction extends to the construction of the flues and construction of the furnaces and flues, and the same question of ordinary skill applies. The law does not hold persons responsible for not making possible improvements, but only such as the experience of men versed in such matters recommends, and as are actually in existence.

"4. Were, then, the flues and the chimney or smoke-stack constructed with the ordinary degree of care and skill I have named? If not, and the injury complained of resulted from

such want of care and skill in construction, and, further, was the natural or probable consequence of such want of care and skill in construction, according to the ordinary experience of men, then the defendants will be liable. But if the chimney or stack, and the flues leading to the same, were constructed with ordinary care and skill, with a prudent regard to the safety of adjoining property, under the circumstances of distance and height, then you should inquire further, whether the burning of the plaintiff's building was caused by the negligent and careless use of the chimney or stack, or the furnaces and flues communicating with it.

"5. Your investigation of this point of negligent use is confined to the time charged in the complaint, that is to say, to the time of the origin of the fire complained of; this, as charged in the complaint, and as appears in evidence, was on or about the 26th of April,.1867. Even if there was negligent use at other times, before or after, yet the plaintiffs are none the less bound to sustain their charge of negligent use at this special time, by a fair preponderance of evidence, than if there had never, at any other time, been any negligent use.

"6. The defendants were bound to use their furnaces, flues, and chimneys with ordinary care and skill. What constitutes ordinary care and skill depends upon the circumstances of the particular case; such care as a reasonable, prudent man would exercise upon the particular occasion would be such ordinary care as the law requires. This care depends upon the degree of danger to be avoided. Where the danger of injury to others is imminent, and the means of avoiding it wholly within the power of the party whose care is required, a higher degree of care is required than in circumstances of less danger, and a failure to use it would amount to a want of ordinary care under the circumstances. But unless, as I have previously suggested, the injury was the natural or probable consequence of the conduct upon the special occasion, according to the ordinary experience of men, the party would not be chargeable.

"7. If you find, then, the plaintiff's building was set on fire by the failure of the defendants to exercise ordinary care, as I have defined it, in the use of the chimney or stack, and the furnaces and flues connected therewith, then your verdict should be for the plaintiffs.

"8. To entitle the plaintiffs to a verdict, there must be a clear, fair preponderance of evidence in support of their allegations, either that the fire resulted from the careless and unskilful construction of the chimney or smoke-stack, or the furnaces and flues connected therewith, or from the use of the chimney or stack by the want of ordinary care and skill, as I have defined, or from both these causes combined.

"9. If the evidence is evenly balanced, in your judgment, or if it preponderates in favor of the defendants, then your verdict should be for the defendants."

The appellants, at the time of giving said instructions, and before the retirement of the jury, as to the giving of each of said instructions objected and excepted.

Appellants moved the court to set aside the verdict and grant a new trial, and assigned the following grounds and causes therefor:

1. The verdict is not sustained by sufficient evidence.

2. The verdict is contrary to law.

3. The court erred in first of its instructions to the jury.

4. The court erred in second of its instructions to the jury.

5. The court erred in third of its instructions to the jury.

6. The court erred in fourth of its instructions to the jury.

7. The court erred in fifth of its instructions to the jury.

8. The court erred in sixth of its instructions to the jury.

9. The court erred in seventh of its instructions to the jury.

10. The court erred in eighth of its instructions to the jury.

11. The court erred in its instructions to the jury.

12. The court erred in admitting evidence to the jury, over defendants' objections, as excepted to at the time.

Gagg *et al. v.* Vetter *et al.*

13. The court erred in rejecting testimony offered by defendants, as excepted to at the time.

14. The court erred in admitting so much of the testimony of witnesses, George M. Bishop, Charles Steigman, Fred Stuckman, Mrs. Dunbar, James Karl, John J. Vetter, Nancy Dunbar, Elizabeth Drots, Lewis Karl, Emil Drots, Mrs. Kolb, and Anna Vetter, and each of them, to the effect that the chimney emitted sparks and fire at other times, before and after the time complained of in the complaint, over the objection of the defendants, to which the defendants at the time excepted.

Motion overruled, and excepted to by appellants.

Judgment rendered on the verdict, to which the appellants at the time excepted and objected.

There are sixteen assignments of error. The first fourteen assignments are mere repetitions of the reasons for a new trial, and are embraced by the fifteenth, which is based upon the action of the court in overruling the motion for a new trial. The sixteenth assignment presents no question in this case that is not presented by the fifteenth assignment of error. The only question presented for our decision is, whether the court erred in overruling the motion for a new trial.

The plaintiffs below, and the appellees here, base their right to recover in this action upon two grounds, and they are:

First. That the flues, chimneys, and furnaces in appellants' brewery, being near to appellees' factory building, were not built in proper shape, nor of sufficient height or capacity, causing burning coals, soot, cinders, sparks, and embers, to be carried therefrom upon the roof of the factory, whereby it was burned and destroyed; and,

Second. That appellants were negligent in the use of the furnaces, flues, and chimneys, by making large fires therein, of highly inflammable and dangerous material, so that the sparks, embers, etc., passed from the chimney to the roof of the factory, burning and destroying it.

The learned counsel for appellants have, in their brief, maintained that the appellees cannot recover upon the first ground stated for the following reasons:

"If in the erection of large and costly structures, important to the development of the country, there arise questions involving philosophical and mechanical principles upon which men of skill and experience differ—such as the proper sizes of furnaces, capacities of flues, and height of chimneys—can it be said to be an act of carelessness or negligence, or wrong, that either or any well supported theory and plan be adopted? We submit, as a question of law, that in such case there can be no liability, even if the decision be unfortunate. This doctrine is essential to the development of the mechanic arts in our country. In such cases the courts will not allow men of enterprise to be destroyed by verdicts, in the absence of wilful disregard of the rights of others.

"We submit further, that in the erection of useful and difficult structures, the parties cannot be charged with negligence or wrong, if they employ the most skilled labor they can command, even if the work prove defective; for they have exercised all the care and diligence possible, and a verdict cannot stand in hostility to this proposition. The construction of the furnaces under the large kettles, and the flues connected therewith in appellants' brewery, was a work of much difficulty, and but few mechanics had the skill to accomplish it. The appellants secured the best workmen they could obtain."

The position of counsel for appellants, as we understand it, is, that if men of skill and experience differ as to the proper and best mode and plan of erecting large and difficult structures, such as the proper sizes of furnaces, capacities of flues, and heights of chimneys, the person who adopts any well supported theory or plan cannot be charged with carelessness, negligence, or wrong, although the decision made was unfortunate, and the plan adopted was not the best which might have been adopted; and that if such person employs, in the construction of such structures, the most

Gagg *et al. v.* Vetter *et al.*

skilled labor which he can command, he cannot be charged with negligence or wrong, although the work may prove defective.

In support of the above position, we have been referred to the following authorities: Shearman and Redfield· Negligence, 506; *Weightman* v. *The Corporation of Washington*, 1 Black, 39; *Ryan* v. *New York Central R. R. Co.*, 35 N. Y. 210; *Lapham* v. *Curtis*, 5 Vt. 371; *The P., Ft. W. & C. Railway Co.* v. *Gilleland*, 56 Pa. St. 445.

The law is stated as follows by Shearman and Redfield:

"If one uses every precaution which the present state of science affords, and which a reasonable man would use under the circumstances, he is not held responsible for omitting other precautions which are conceivable; even though, if he had used them, the injury would certainly have been avoided. So, if he uses all the skill and diligence which can be attained by reasonable means, he is not responsible for failure. * * * * * Regard is to be had, in judging of negligence, to the growth of science, and the improvement in the arts, which take place from generation to generation; and many acts or omissions are now evidence of gross carelessness, which a few years ago would not have been culpable at all, as many acts are now consistent with great care and skill, which in a few years will be considered the heighth of imprudence." Shearman and Redfield Negligence, 5.

In our opinion, the above authority does not support the position assumed. The law is stated to be, "If one uses every precaution which the present state of science affords, and which a reasonable man would use under the circumstances, he is not held responsible for omitting other precautions which are conceivable."

The case of *Weightman* v. *The Corporation of Washington, supra*, was an action to recover damages for personal injuries received by the plaintiff by the falling of a bridge which the city was bound to maintain. The defence was, that the bridge was built by skilful men, and upon a plan ap-

proved by scientific persons, and that the corporation had no notice of any defect, or of its being out of repair. The case mainly turned upon whether the corporation was bound by its charter to keep the bridge in question in repair, and whether the corporation had notice that it was out of repair. The court, after enumerating certain powers which are granted to municipal corporations, which are undefined and discretionary, say: "But the duties arising under such grants are necessarily undefined, and, in many respects, imperfect in their obligation, and they must not be confounded with the burdens imposed, and the consequent responsibilities arising, under another class of powers usually to be found in such charters, where a specific and clearly-defined duty is enjoined in consideration of the privileges and immunities which the act of incorporation confers and secures. Where such a duty of general interest is enjoined, and it appears, from a view of the several provisions of the charter, that the burden was imposed in consideration of the privileges granted and accepted, and the means to perform the duty are placed at the disposal of the corporation, or are within their control, they are clearly liable to the public if they unreasonably neglect to comply with the requirement of the charter; and it is equally clear, when all the foregoing conditions concur, that, like individuals, they are also liable for injuries to person or property arising from neglect to perform the duty enjoined, or from negligence and unskilfulness in its performance."

The case of *Ryan* v. *New York Central R. R. Co.,* 35 N. Y. 210, was a case where fire was communicated by an engine to a wood-shed of the company, and from that to the plaintiff's house. It was held that the damages were too remote, and that there could be no recovery.

But the court lays down a principle of law that has some bearing on the present case. It is said: "So if an engineer on a steamboat or locomotive, in passing the house of A., so carelessly manages the machinery that the coals and sparks from its fires fall upon and consume the house of

A., the railroad company or steamboat proprietors are liable to pay the value of the property thus destroyed. *Field* v. *The New York Central Railroad,* 32 N. Y. 339. Thus far the law is settled and the principle apparent." The distinction between that case and the case at bar is clearly put by the court in this further extract: "I prefer to place my opinion upon the ground that, in the one case, to wit, the destruction of the building upon which the sparks were thrown by the negligent act of the party sought to be charged, the result was to have been anticipated the moment the fire was communicated to the building; that its destruction was the ordinary and natural result of its being fired.   *   *   But that the fire should spread and other buildings be consumed, is not a necessary or an usual result."

The case of *Lapham* v. *Curtis, supra,* was an action by the owners of a furnace which was situated below a mill-dam and pond owned by the defendant, to recover damages for injuries done to the furnace by an overflow of water, which was alleged to have been caused by the defective, negligent, and unskilful manner in which such dam had been constructed, and in which repairs thereto had been made. The court held that the owner of the dam had a prescriptive right to maintain such dam, and that he had the right to make repairs thereto, and then proceeded to define the care and diligence which he was required to use in making such repairs, as follows:

"But the defendant was subject to the maxim, *sic utere tuo ut alienum non lædas.* To comply with this requisition of the common law, it was the duty of the defendant to have used ordinary care and diligence in making repairs to his dam; or in drawing off the water from his pond, to prevent injuries to the plaintiffs' furnace. If the defendant did not use this care and diligence, he was guilty of negligence, and liable for consequential damages; but he was not liable for inevitable accidents."

The case of *The Pittsburg, Fort Wayne, and Chicago Railway* v. *Gilleland,* 56 Pa. St. 445, was an action by the ap-

pellee, the owner of land through which appellant's road passed, to recover damages for an injury caused to his land by the continuance, after notice, of an insufficient culvert, so unskilfully and negligently constructed by the former proprietors of the road as not to vent all the water that flowed down the channel, over which it was built, in the ordinary seasons of high water. The action was founded upon the duty of a railroad company to construct its works with proper skill and care, and with a due regard to the features of the ground over which its road passes.

It was contended by the appellant that the injury from an insufficient culvert fell within the special authority given for the appropriation of the land and the damages arising therefrom. The court, after considering and deciding such question against the appellant, proceeded to consider and determine the common law liability of the railroad company. The court said: "And on this point there is no doubt, upon general principles and adjudicated cases. The entry of a company to build its railroad being lawful, it stands as if it were on its own ground, and the maxim applies, *sic utere tuo ut alienum non lædas.* It should so perform its act as not to carry over its injurious consequences beyond the hurt it may lawfully inflict. It is said in Hilliard on Torts, 125, and numerous examples are there adduced, that acts innocent and lawful in themselves may become wrongful when done without a just regard to the rights of others, and without suitable reference to the time, place or manner of performing them. The test of exemption from liability for injury arising from the use of one's own property is said to be the legitimate use or appropriation of the property in a reasonable, usual, and proper manner, without any unskilfulness, negligence or malice. *Carhart* v. *Auburn Gaslight Co.,* 22 Barb. 297. The distinction is vital, says THOMAS, J., in *Rockwood* v. *Wilson,* 11 Cush. 221, for nothing is better settled than that if one do a lawful act upon his own premises, he cannot be held responsible for injurious consequences that may result from it, unless it was so done as to constitute actiona-

ble negligence. But lawful acts may be performed in such a manner, so carelessly, negligently, and with so little regard to the rights of others, that he who, in performing them, injures another, must be responsible for the damage. *Bur-. roughs* v. *The Housatonic Railroad Co.*, 2 Am. R. Cas. 35."

While the foregoing authorities have an important bearing upon the principal question in the case, they do not, in our judgment, support the positions assumed by counsel for appellants.

Addison on Torts, 242, states the law as follows: "Whenever it is practicable to adopt precautions that will render damage by fire from a furnace 'next to impossible,' a failure to adopt those precautions will be negligence. Where a spark of fire from the chimney of a locomotive engine on a railroad fell on the thatch of a cart-lodge, and set it on fire, and the fire communicated to several other farm buildings, and totally destroyed them, it was held that the very occurrence of the disaster was, *prima facie*, proof of negligence on the part of the company and their servants having the management of their engine, rendering it incumbent on them to show that every possible precaution had been taken to prevent the escape of sparks."

The following authorities are referred to by the author: *Piggot* v. *Eastern Counties R. W. Co.*, 3 C. B. 229; *Aldridge* v. *Great Western Railway Co.*, 3 Man. & G. 515; *Fremantle* v. *London and North Western Railway Co.*, 10 C. B. N. S. 89; 31 Law J. C. P. 12; 2 F. & F. 337; *Vaughan* v. *Taff Vale Railway Co.*, 3 H. & N. 743; 28 Law J. Exch. 41; 29 Law J. Exch. 247; 5 H. & N. 679.

In *Fremantle* v. *The London and North Western Railway Co.,. supra*, it was said: "It must, therefore, be considered what would be negligence on the part of the defendants, for the consequences of which they ought to be held responsible. That, as to that, the defendants, in the construction of their engines, were bound, not only to employ all due care and all due skill for the prevention of mischief occurring to the

property of others, by the emission of sparks, or any other causes, but they were bound to avail themselves of all the discoveries which science had put in their reach for that purpose, provided that they were such as, under the circumstances, it was reasonable to require them to adopt."

In *Vaughan* v. *Taff Vale Railway Co., supra,* it was held by the Exchequer Chamber, that a railway company is not responsible for an accidental fire caused by a spark falling from one of their engines upon premises adjoining the railway, if they have taken every precaution that science can suggest to prevent injury.

It was held, in *The Illinois Central R. R. Co.* v. *McClelland,* 42 Ill.355, that a railroad company, by failing to provide the most approved appliances for arresting sparks from their engines, becomes liable for all casualties occasioned thereby.

In *Fero* v. *The Buffalo, etc., R. R. Co.,* 22 N. Y. 209, it was said: "The train was running at the usual rate of speed, in the open country, and it was shown that the engine was of the most approved construction; the spark-arresters of the best pattern; and that a suitable police had been provided upon the road for the purpose of following trains and looking after fires." These circumstances were held sufficient to discharge the defendants from liability for the damages which were supposed to have been occasioned by flying sparks from the engine.

In *Kelsey* v. *Barney,* 2 Kern. 425, JOHNSON, J., in speaking of the degree of care required, says, in his opinion, that under some circumstances, a very high degree of vigilance is demanded, even under the requirements of ordinary care. "Where," he says, "the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight."

In *Johnson* v. *The Hudson River R. R. Co.,* 20 N. Y. 65, the court held, that "they were bound to exercise the utmost care and diligence; and for the purpose of avoiding acci-

dents, endangering property and life, were bound to use all the means and measures of precaution that the highest prudence could suggest, and which it was in their power to employ."

In *Hegeman* v. *The Western Railroad Corporation,* 3 Kern. 9, the company was held liable for injury resulting from the breaking of the axle of the car. On the part of the defendant, it was proved that the track of the railroad was in good order, and that the train was manned by a competent and skilful conductor, engineer, and brakemen; that at the time of the accident, the train was going at the rate of from twenty-five to thirty miles per hour, being the ordinary speed of passenger trains; and when the accident occurred, the employees of the defendant were at their appropriate places, and the train was stopped as soon as possible after the axle broke. The conductor, who was in charge of the train at the time, testified that the car which broke had been run upon the road about sixteen months; that it was new when it came into the train; that it was built at Springfield, by The Springfield Car and Engine Company; that it was an excellent car, and was used only during the summer months, as they did not wish to deface it by putting stoves in it.

It was very earnestly insisted by learned counsel in the Court of Appeals, that under the circumstances stated the company was not liable; but the judgment of the court below was affirmed. The court say: "It was said that carriers of passengers are not insurers. This is true. That they were not required to become smelters of iron, or manufacturers of cars, in the prosecution of their business. This also must be conceded. What the law does require is, that they shall furnish a sufficient car to secure the safety of their passengers, by the exercise of the 'utmost care and skill in its preparation.' They may construct it themselves, or avail themselves of the services of others; but in either case, they engage that all that well-directed skill can do has been done for the accomplishment of this object. A good reputation upon the part of the builder is very well in itself, but ought

. not to be accepted by the public, or the law, as a substitute for a good vehicle. What is demanded, and what is undertaken by the corporation, is not merely that the manufacturer had the requisite capacity, but that it was skilfully exercised in the particular instance. If to this extent they are not responsible, there is no security for individuals or the public."

The case of *The Terre Haute, etc., R. R. Co.* v. *McKinley,* 33 Ind. 274, was an action by the appellee against the appellant, to recover damages for overflowing his lands, which was alleged to have been caused by an insufficient and defective culvert upon the lands of the plaintiff.

The defence of the company was placed upon the ground that the new culvert was necessary to the safety of passengers and property passing over the road, and that it was built with care, skill, and prudence. The court below refused to so charge the jury. This court, for that error, reversed the judgment. The court say: "The jury ought to have been plainly charged, so far as the injury from overflowing the lands of the plaintiff by the construction of the embankment and abutment was concerned, that if they found, from the evidence, that the embankments and abutments were necessary to the safety of passengers and property passing over said road, and that it was built, constructed, and erected, with care, skill, and prudence, not only as to safety of persons and property passing over the road, but also for the protection and safety of the property holder, then the finding on that issue should be for the defendant."

In the above case, the main point of controversy was, whether the aperture was large enough to carry off the water. Upon that point a number of scientific witnesses were examined, who differed widely in their views. There was also much evidence as to the skill and experience of the workmen who put up the work. In our opinion, this court placed its decision upon reasonable and solid ground, and that was, that if the new structure was necessary for the safety of passengers and property passing over the road, and

if the same was built with care, skill, and prudence, and with a due regard to the protection and safety of the property holder, the company was not liable, and that these questions should have been submitted to the jury.

In our opinion, it would be a very unsafe and dangerous rule to hold that a builder might adopt any well-supported theory as to the proper and best plan and mode of constructing large and difficult structures, and that if he employed workmen of skill and experience, he could not be charged with carelesness or negligence, if such plan should prove defective and such work should be unskilfully performed.

We know, from experience and observation, that men of skill and experience entertain radically different views upon questions of science and skill, and support their conflicting theories with ingenuity and plausibility, even after experience and observation have demonstrated their falsity and fallacy; and in like manner we know that some workmen of undisputed reputation for experience and skill perform their work in a careless and unskilful manner.

The appellants' brewery was built in a populous part of a large and rapidly increasing city. The property of the appellees, which was destroyed by the fire, was there at the time the brewery was constructed. This imposed upon the appellants the necessity of exercising a higher degree of care and diligence in the construction and management of their brewery than if it had been located in the country, or in a part of the city where there were no houses in its immediate vicinity. A mere difference of opinion among men of science and experience as to the best plan to construct the chimney, furnace, and flues did not justify the selection of any well-supported theory without further inquiry, for they were bound to use all due care and vigilance to ascertain which theory was correct and which was incorrect; and, for that purpose, they were bound to avail themselves of all the discoveries which science and experience had put within their reach. While the law does not require absolute scien-

tific perfection in the construction of such works, it does re-
quire the exercise of a high degree of care and skill to as-
certain, as near as may be, the best plan for the structures;
and it requires not only that skilful and experienced workmen
shall be employed in their construction, but that due skill
was exercised in the particular instance.

We are aware that a higher degree of care and diligence is
required on the part of common carriers toward passengers
than in ordinary cases, and some of the above cases may
have laid down a rule of strictness that would not be appli-
cable to the case under consideration. In the present case,
the defendants were required, in the adoption of the plan and
in the construction of their chimney, flues, and furnaces, to
exercise ordinary care, prudence, and foresight; that is, such
a degree of care and attention as experience has found rea-
sonable and necessary to prevent injury to others in like cases.

This is what is understood by the terms, "ordinary care
and diligence."

The liability of the defendants in this action was placed
upon this ground. The court below instructed the jury that,
"the law does not demand absolute scientific perfection in
the construction of such works, but only that ordinary de-
gree of skill in such construction which mechanics, versed
in works of the kind, ordinarily used."

It is also maintained by counsel for appellants that the ap-
pellees ought not to recover in this action, from the circum-
stance that no such action as the present has ever been sus-
tained in any of the courts of this country, and in support
of such position, quote the following language from the
opinion of the court in the case of *Ryan* v. *The New York
Central R. R. Co., supra*: "That the defendant is not liable
in this action may also be strongly argued, from the circum-
stance that no such action as the present has ever been sus-
tained in any of the courts of this country, although the oc-
casion for it has been frequent and pressing. Particular in-
stances are familiar to all, where such claims might have been
made with propriety. The instance of the Harpers, occurring a

few years since, is a striking one. 23 N. Y. 441. Their large printing establishment, in the city of New York, was destroyed by the gross carelessness of a workman, in throwing a lighted match into a vat of camphene. The fire extended, and other buildings and much other property was destroyed. The Harpers were gentlemen of wealth, and able to respond in damages to the extent of their liability. Yet we have no report in the books, and no tradition, of any action brought against them to recover such damages."

The above quoted language is not applicable to the present case, for the reason that the fire, which came out of the defendants' chimney, dropped upon the property of the plaintiffs' and set it on fire, while in that case the wood-shed of the company was set on fire by sparks from the engine, and the plaintiff's house, situated at a distance of one hundred and thirty feet, took fire from the heat and sparks and was consumed. The ruling of the court in that case was placed upon the ground that the damages sustained by the plaintiff were too remote. HUNT, J., speaking for the court, says: "My opinion, therefore, is, that this action cannot be sustained, for the reason that the damages incurred are not the immediate but the remote result of the negligence of the defendants. The immediate result was the destruction of their own wood and sheds; beyond that, it was remote." In further proof of the fact that the language quoted does not apply to the present case, we again quote from the above case the following language: "So if an engineer upon a steamboat or locomotive, in passing the house of A., so carelessly manages its machinery that the coals and sparks from its fires fall upon and consume the house of A., the railroad company or the steamboat proprietors are liable to pay the value of the property thus destroyed."

But conceding that the above language applies to the present case, the question arises as to the meaning to be attached to the expression, "No such action as the present has ever been sustained in any of the courts of this country." If by the phrase, "no such action," is meant no action

founded upon, and governed by, any of the known and well-settled principles of the law, then the objection is entitled to great weight and consideration, for the courts of this country do not possess the power to make law, but their functions are confined to the exposition of the law as it is, and its application to the facts of each new case, as it shall arise in the administration of justice.   The law consists of rule, of reason, of legal principles, and not of mere points as presented in particular cases.   If, however, by the words, "no such action," is meant that no action is based .upon the same identical state of facts, then the question ceases to be one of difficulty or importance.

The wide and marked difference between the general principles of the law, and the points as presented in particular cases is stated with great accuracy, clearness, and force, by Mr. Chief Justice SHAW, in *Norway Plains Co.* v. *Boston and Maine Railroad,* 1 Gray, 263, where he says : "It is one of the great merits and advantages of the common law, that, instead of a series of detailed practical rules, established by positive provisions, and adapted to the precise circumstances of particular cases, which would become obsolete and fail, when the practice and course of business, to which they apply, should cease or change, the common law consists of a few broad and comprehensive principles, founded on reason, natural justice, and enlightened public policy, modified and adapted to the circumstances of all the particular cases which fall within it.   These general principles of equity and policy are rendered precise, specific, and adapted to practical use, by usage, which is the proof of their general fitness and common convenience, but still more by judicial exposition ; so that, when in a course of judicial proceeding, by tribunals of the highest authority, the general rule has been modified, limited and applied, according to particular cases, such judicial exposition, when well settled and acquiesced in, becomes itself a precedent, and forms a rule of law for future cases, under like circumstances.   *   *   *   *   *·  *
The consequence of this state of the law is, that when a

Gagg *et al. v.* Vetter *et al.*

new practice or new course of business arises, the rights and duties of parties are not without a law to govern them; the general considerations of reason, justice, and policy, which underlie the particular rules of the common law, will still apply, modified and adapted, by the same considerations, to the new circumstances. If these are such as give rise to controversy and litigation, they soon, like previous cases, come to be settled by judicial exposition, and the principles thus settled soon come to have the effect of precise and practical rules. Therefore " (applying these observations to the case before the court), " although steamboats and railroads are but of yesterday, yet the principles which govern the rights and duties of carriers of passengers, and also those which regulate the rights and duties of carriers of goods, and of the owners of goods carried, have a deep and established foundation in the common law, subject only to such modifications as new circumstances may render necessary and mutually beneficial."

We proceed to inquire whether the facts and circumstances of the case before the court bring it within any of the well-settled principles of the common law; and in determining such question we will be guided by elementary principles and judicial expositions.

There is an elementary and fundamental principle of law, which is based upon, and is coeval with, the right to own and control property, that a man must so use his own rights and property as to do no injury to those of his neighbor; for in all civil acts the law does not so much regard the interest of the actor as the loss and damage of the party suffering. Saunders Negligence, 61.

The above is one of the broad and comprehensive principles of the law spoken of by SHAW, C. J., *supra*, and there have been in England and in this country many judicial expositions of such principle, making an application thereof to the facts and circumstances of particular cases, thus establishing precedents which become a rule of law for future cases.

It has accordingly been held, that every person who occupies land, who allows wells or mining shafts to remain on his land unguarded and unprotected, is responsible in damages to all persons who sustain injury from falling into them, provided they were lawfully traversing the land on which the shaft or well existed, and fell into it without any negligence or misconduct on their part; but if, however, they were at the time trespassers on the land, they would not be entitled to maintain the action. *Hardcastle* v. *The South Yorkshire R. W. Co.,* 4 H. & N. 67; 28 L. J. Exch. 137; *Blyth* v. *Topham,* 4 Cro. Jac. 158; *Hounsell* v. *Smyth,* 7 C. B. N. S. 731; 29 L. J. C. P. 203; *Gautret* v. *Egerton,* 36 L. J. C. P. 191; *Corby* v. *Hill,* 4 C. B. N. S. 556; 27 L. J. C. P. 318; *Gallagher* v. *Humphrey,* 6 Law Times, 684; *Groucott* v. *Williams,* 4 Best & S. 149; 32 L. J. Q. B. 237; *Howland* v. *Vincent,* 10 Met. 371; *Bush* v. *Brainard,* 1 Cowen, 78.

In *Lee* v. *Riley,* 18 C. B. N. S. 722; 34 L. J. C. P. 212, it appeared that through the defect of a gate, which the defendant was bound to repair, his horse got out of his farm into an occupation-road, and strayed into the plaintiff's field, where it kicked the plaintiff's horse; and it was held, that the defendant was liable for the trespass by his horse, and that it was not necessary, for the maintenance of the action, to prove that the defendant's horse was vicious, and that the defendant was aware of it; also, that the damage the plaintiff had sustained by the injury to his horse was not too remote, but was sufficiently the consequence of the defendant's neglect to be recoverable.

Gale on Easements, 335, in speaking of the support of land, says: "If every proprietor of land was at liberty to dig and mine at pleasure on his own soil, without considering what effect such excavations must produce upon the land of his neighbors, it is obvious that the withdrawal of the natural support would, in many cases, cause the falling in of the land adjoining.    *    *    *    The negation of this principle would be incompatible with the very security for property, as it is obvious that if the neighboring owners

Gagg *et al. v.* Vetter *et al.*

might excavate their soil on every side up to the boundary line to an indefinite depth, land thus deprived of support on all sides could not stand by its own coherence alone."

It has been held, that if the owner of a house which is being pulled down, conducts the work in so irregular, negligent, and improper a manner that injury is produced thereby to the adjoining house, he will be liable to make compensation in damages for the consequences of his want of caution. *Walters* v. *Pfeil*, Moody & M. 362; *Dodd* v. *Holme*, 1 Ad. & E. 493.

It has been held in many cases, that a person engaged in building is responsible for injuries caused by defective scaffolding, where due care has not been used. Hay Accidents & Negligence, 121.

It has been repeatedly held that the owners of coal pits, blast furnaces, rolling mills, and manufactures generally, are liable for injuries caused by defective machinery, where proper care has not been used. Hay Accidents & Negligence, 130, *et seq.*

It was held, in *Hewey* v. *Nourse*, 54 Maine, 256, that "every person has a right to kindle a fire on his own land for the purposes of husbandry, if he does it at a proper time, and in a suitable manner, and uses reasonable care and diligence to prevent its spreading and doing injury to the property of others. The time may be suitable and the manner prudent, and yet if he is guilty of negligence in taking care of it, and it spreads and injures the property of another, in consequence of such negligence, he is liable in damages for the injury done. The gist of the action is negligence, and if that exists in either of these particulars, and injury is done in consequence thereof, the liability attaches; and it is immaterial whether the proof establishes gross negligence, or only a want of ordinary care, on the part of the defendant."

To the same effect are the cases of *Bachelder* v. *Heagan*, 18 Maine, 32; *Barnard* v. *Poor*, 21 Pick. 378; *Tourtellot* v. *Rosebrook*, 11 Met. 460.

In *Teall* v. *Barton*, 40 Barb. 137, the defendants were

engaged, under a contract with the state authorities, in removing a sunken boat from the channel of the canal, by means of a steam dredging machine, in the vicinity of the plaintiff's buildings, using wood for fuel, without any spark-catcher or screen upon their smoke-stack. A high wind blowing the sparks and cinders to and over the farm .buildings,. the defendants were notified by the plaintiff's agent or servant of the danger to such buildings; notwithstanding which, the defendants continued to use their dredge, keeping up the fire thereon without putting on a spark-catcher, or using any extra precaution to prevent injury from fire. The buildings of the plaintiff being consumed by fire communicated to a pile of straw by sparks, it was held that the defendants were guilty of carelessness and negligence, and were liable for the damages occasioned by the fire.

The case of *The Steamboat New World* v. *King*, 16 How. U. S. 469, was an action for damages occasioned by the explosion of a boiler, alleged to have been caused by the want of care and skill on the part of the persons in charge of the vessel. The court say : " That the proper management of the boilers and machinery of a steamboat requires skill, must be admitted. Indeed, by the act of Congress of August 30th, 1852, great and unusual precautions are taken to exclude from this employment all persons who do not possess it. That an omission to exercise this skill vigilantly and faithfully endangers, to a frightful extent, the lives and limbs of great numbers of human beings, the awful destruction of. life in our country by explosions of steam boilers but too painfully proves. We do not hesitate therefore to declare that negligence in the care or management of such boilers, for which skill is necessary, the probable consequence of which negligence is injury and loss of the most disastrous kind, is to be deemed culpable negligence, rendering the owners and the boat liable for damages, even in case of gratuitous carriage of a passenger. Indeed, as to explosion of boilers and flues, or other dangerous escape of steam on board steamboats, Congress has, in clear terms, excluded

all such cases from the operation of a rule requiring gross negligence to be proved to lay the foundation of an action for damages to person or property."

It has been held frequently that the owners of steamboats are liable for the destruction of property by fire caused by sparks from their smoke-stacks, where due care has not been used.

It has been so repeatedly decided in England and in this country, that railroad companies are responsible for the destruction of property by fire caused by sparks or coals of fire from their engines, where all reasonable precautions have not been used to prevent such injury, that we would not be justified in attempting to cite authorities in support thereof. The citation of such cases would cover several pages.

The principles of law enumerated in the foregoing analogous cases apply with equal force and directness to the present case, and fix and determine the liability of the appellants. We are, therefore, of the opinion that the appellants are liable in damages to the extent of the injury sustained by the appellees, if it was proved upon the trial, either that ordinary care and diligence were not employed in the construction of their chimney, furnaces, and flues, or that they were guilty of negligence in the management thereof.

Appellants' counsel contend that there is no evidence of the use of any dangerous or improper fuel. Counsel for appellees admit that there was no witness who testified to the particular kind of fuel used in the furnace on the morning in question, but they maintain that there was evidence from which the jury had the right to conclude that dangerous and improper fuel had been used; they contend that it was abundantly proved that smoke, sparks, and flame were seen coming from the chimney top; that such evidence, when considered in the light of the testimony of the experts, conclusively demonstrated either that improper fuel had been used, or that the chimney and flues had been unskilfully built, for the reason that all the scientific witnesses testified and agreed that a well-constructed chimney, in which safe

fuel only was used, would not send out sparks and fire from the top.

While positive affirmative testimony as to the kind of fuel used would have been more satisfactory and convincing, the jury may have found, from the effects produced, that dangerous and inflammable fuel was used.

Upon the ground, namely, the negligent and improper construction of the furnace and chimney, appellants' counsel concede that there was evidence upon which the verdict might rest, but they claim that the weight of the evidence is the other way. They attempt to take this case out of the rule of this court against determining questions of the weight of evidence, by the suggestion that the question is "dependent for its solution upon philosophical principles and mechanical skill and judgment." This may be true to an extent, but these principles and that skill and judgment are the subject of evidence, and this court is as much bound to respect the conclusions of a jury in this class of cases as in any other.

The question of negligence is one of mingled law and fact, to be decided as a question of law by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed and the evidence is conflicting.

*Field* v. *New York Central Railroad,* 32 N. Y. 339; *Fremantle* v. *London, etc., R. W. Co., supra; Greenleaf* v. *The Illinois, etc., R. R. Co.,* 29 Iowa, 14; *Jenkins* v. *Little Miami R. R. Co.,* 2 Disney, 49; *Eagan* v. *Fitchburg R. R. Co.,* 101 Mass. 315; *Maloy* v. *The New York Central R. R. Co.,* 58 Barb. 182; *Belton* v. *Baxter,* 2 Sweeny (N. Y.) 339; *The Pennsylvania Canal Co.* v. *Bentley,* 66 Pa. St. 30.

The opinion of the court, in the case of *Field* v. *New York Central Railroad, supra,* is so much in point, that we have concluded to make an extended quotation therefrom. The court say: "But the defendants now insist that although they may have caused the injury, the nonsuit should have been granted for the reason that no cause of negligence on

their part was made out. If I understand their position correctly, it is, that in this class of cases it is incumbent upon the party injured, if he would make a *prima facie* case, to show affirmatively that there was something improper in the construction of the defendants' engines, or that they were not in order, or were insufficiently or improperly managed. This is not the rule. Undoubtedly, the burden of proving that the injury complained of was caused by the defendants' negligence was upon the plaintiff. To show negligence, however, it was not necessary that he should have proved affirmatively that there was something unsuitable or improper in the construction or condition or management of the engine that scattered the fire communicated to his premises. It often occurs, as in this case, that the same evidence which proves the injury shows such attending circumstances as to raise a presumption of the offending party's negligence, so as to cast on him the burden of disproving it. Then the injury was caused by dropping from the defendants' engines coals of fire. The fact that the sparks or coals were scattered at all upon their roadway, in such quantities as to endanger property on abutting premises, raised an inference of some weight that the engines were improperly constructed or managed. But this was not all. It was conceded and proved that if the engine is properly constructed, and in order, no fire of any amount will escape to be distributed along the track. It was shown that four or five of the defendants' engines that passed the plaintiff's farm, were defective in apparatus to avoid scattering of fire, and although the others were fitted with the necessary improvements to retain it, and in this respect there was no want of care on the part of the company, yet that constant oversight was required, and if they scattered fire, it was because they were out of order. It was legitimately to be inferred from these facts, that the scattering of coals of fire from the defendants' engines which were found upon their track, and which produced the injury, was the result either of defectiveness in the machinery, or neglect in repairing it.

There was enough, therefore, in the evidence to justify a submission of the question to the jury, whether the injury complained of was caused by the negligent conduct of the defendants."

In the summing up of the judge to the jury in the case of *Fremantle* v. *London, etc., Railway Co.,* 10 C. B. 89, he said: "The question is, whether, notwithstanding the evidence of impossibility which has been adduced by all that numerous company of witnesses, do you nevertheless think that the plaintiffs have . established the fact that the fire could not be accounted for upon any other supposition than that it must have come from the engine. If you do, then I must repeat that all this evidence that is so powerful on the first question is cogent against the defendants upon the second, because it then goes to show that the fire was occasioned by an engine which was so perfect in its quality that nothing could have caused the emission of sparks except negligence, either in the condition of the engine or in the way in which it was worked by the driver; and therefore the evidence then becomes cogent the other way."

May it not be said in the case at bar, with equal force, that when the jury once adopted the conclusion, from the evidence, that sparks from defendants' chimney did fire plaintiffs' house, the evidence that this was a well-constructed chimney became cogent against defendants, upon the question of a negligent use. The first fact being proved, the more perfectly the structure of the work is justified, the more clearly its misuse is shown.

There was much evidence on both sides on the question of the skilful and careful construction of the chimney, the furnace, and flues. The evidence was conflicting, and therefore the question of fact was properly submitted to the jury. The jury was correctly instructed as to the law applicable to the case. In such a case, we cannot disturb the verdict. To do so, would be to usurp the functions of the jury.

It is also claimed that the court erred in the admission of

testimony to prove that smoke, sparks, and flame had been seen coming out of the top of the chimney at other times than on the occasion of the injury complained of, and, in instructing the jury, that it was proper for them to consider and weigh such evidence, in determining whether the chimney and smoke-stack had been properly constructed.

That such evidence was properly admitted, and that the instruction complained of contained a correct exposition of the law, is too well settled to admit of a doubt. The question should no longer be regarded as an open one. *Piggot* v. *The Eastern Counties Railway Co.,* 10 Jur. 571 ; *Aldridge* v. *The Great Western Railway Co.,* 3 Man. & G. 515; *Sheldon* v. *The Hudson River R. R. Co.,* 14 N. Y. 218 ; *Field* v. *New York Central Railroad,* 32 N. Y. 339; *Ross* v. *Boston, etc., R. R. Co.,* 6 Allen, 87.

In *Field* v. *New York Central Railroad, supra,* the court say: "The remaining exception was to the reception of testimony, that coals of fire had been frequently found on defendants' track, or been seen to have dropped from their engines in passing the plaintiff's farm, on other occasions than that of the fire complained of. The competency of this species of proof was settled in the case of *Sheldon* v. *The Hudson River R. R. Co.,* 4 Kernan, 218. It was said in that case, in the leading opinion, the evidence 'had a bearing upon both branches of the case which the plaintiff undertook to establish. It not only rendered it probable that the fire was communicated from the furnace of one of the defendants' engines, but it raised an inference of some weight, that there was something unsuitable and improper in the construction of the engine which caused the fire.' "

Finally, it is earnestly insisted by counsel for appellants, that the verdict is not supported by the evidence. But counsel for appellees contend that all the evidence is not in the record. We will state the point in the language of the counsel. They say: "There is a sufficient reason, however, aside from the rule referred to, why this court cannot

consider the question of the weight of the evidence, on this or the other branches of the case. The evidence is not all here. The jury, after the conclusion of the oral evidence, was, at the request of the appellants, conducted by a bailiff to inspect the premises concerning which evidence had been given, and particularly the furnaces, chimney, etc., of appellants' brewery. What they saw, or what impressions were made upon their minds by what they saw, this court cannot know.

"This inspection may have modified the views of the jurors as to the decisive facts in the case. The furnaces may have been in operation, and their defects may have been demonstrated in the very view of the jurors. Of all this, the court here can know nothing. In the case of *The Evansville, etc., R. R. Co.* v. *Cochran*, 10 Ind. 560, the court refused to consider a question as to the sufficiency of the evidence to support the verdict, on the ground that all the evidence was not in the record; the jury having been sent to inspect the premises, and there being nothing in the record to show the effect of the examination upon their minds. There seems to be good reason in this, and if the ruling is adhered to, there is an end of the appellants' objections."

The objection is not well taken. The case of *The Evansville, etc., Railroad Co.* v. *Cochran, supra,* was in express terms overruled by this court in the case of *The Jeffersonville, etc., Railroad Co.* v. *Bowen,* 40 Ind. 545.

We, therefore, hold that the evidence is all in the record. There are eleven hundred and forty-five pages in the record. The appellants have furnished us with a printed abstract of the evidence, which covers sixty-eight pages. We have read and considered with great care such abstract, and the substance of the entire evidence, and we have read in full the testimony of all the witnesses to whom our attention has been specially called by counsel for appellant. We have had the case under advisement and consideration for a long time. We have given the questions involved a patient and

careful consideration, and entertain no doubt that we are required by the law and the well-settled practice of this court to affirm the judgment.

The evidence is plainly, palpably, and directly conflicting. The verdict of the jury depended upon the weight which should be given to the testimony of the two sets of witnesses. The testimony could not be reconciled and harmonized so that it might all stand. The jury were compelled to believe the one set and disbelieve the other, except the scientific witnesses, who, doubtless, honestly differed in their views.

Upon such a state of facts we cannot disturb the verdict. *The Madison and Indianapolis Railroad Co.* v. *Taffe,* 37 Ind. 361.

The judgment is affirmed, with costs.*

T. A. *Hendricks,* O. B. *Hord,* A. W. *Hendricks,* J. *Hanna,* and F. *Knefler,* for appellants.

A. G. *Porter,* B. *Harrison,* W. P. *Fishback,* and C. C. *Hines,* for appellees.

*Petition for a rehearing overruled.