JESSE LAPHAM et al. vs. JOSEPH CURTIS.

BENNINGTON,
February,
1833.

Lapham et al
vs.
Curtis.

It is the duty of A., who has a dam across a stream, which raises a large
pond, to use ordinary care and diligence in making repairs to his dam, or in
drawing off the water, to prevent injury being done to B's mills below on the
same stream. If A. do not use care and diligence, he is guilty of negligence,
and liable for consequential damages; but not for inevitable accidents.

This was an action on the case, tried at the County
Court, September Term, 1832, on the general issue of *not
guilty*.

Upon the trial of said issue, evidence was given by the
plaintiffs, tending to show, that the plaintiffs, at the time
mentioned in their said declaration, and for several years
before, had been and were jointly concerned in carrying
on the furnace business at their furnace below the Dorset
pond, so called, in Dorset, in said County; and then had
upon and about their said furnace-yard, divers stoves, pig-
iron castings, and other property, as stated in their decla-
ration.

The plaintiffs further gave evidence tending to show,
that the defendant then was, and for many years before
had been, the owner and possessor of a saw-mill and dam,
erected at the outlet of said Dorset pond, and above the
plaintiffs' said furnace, upon the same stream; by means
of which said dam, the plaintiffs had raised, and kept rais-
ed, a large body of water, about one mile in length, vary-
ing in width from a few rods to half a mile, and raised a-
bout ten feet above the natural surface of said pond,—that
on or about the first of December, A. D. 1830, the said
dam of the defendant gave way, and let down the whole
body of water in said pond upon the works of the plain-
tiffs below; and that said water swept away and destroy-
ed the property of the plaintiffs to a large amount, as sta-
ted in their declaration; and that at the time the said dam
so gave way, there had been no unusual fall of rain, and
the water in said stream was not above its ordinary height.

The plaintiffs further gave evidence tending to show,
that the defendant erected his said mill-dam about four-
teen years before the year 1830, and that two or three
years before the said dam gave way as aforesaid, the said
dam, and the floom of said mill had been, and continued
to be, and at the time of said giving way was, in a rotten,

BENNINGTON,
February,
1833.

Lapham et al
vs.
Curtis.

decayed, dilapidated and unsafe condition, and insufficient to restrain the said body of water so raised thereby as aforesaid; and that the defendant, during all that time, knew and well understood the condition of said dam and floom, and neglected to repair the same, though he kept the said body of water raised by the said dam whenever he wanted to use the same; and that the defendant, in the month of January, A. D. 1830, had been specially requested by the plaintiffs, in writing, to repair his said dam, or draw off his said water.

The plaintiffs further gave evidence tending to show, that in consequence of the said rottenness, unsoundness and insufficiency of said dam and floom, and for want of due reparation thereof, the same gave way, and let down the water of said pond upon the plaintiffs, to the destruction of their property, as aforesaid.

Evidence was also given tending to show, that said dam, as it was originally constructed, was sufficient for the purpose for which it was designed.

The defendant introduced evidence, on his part, tending to prove, that he had erected a mill-dam upon the same site, which he had owned above forty years, and more than twenty years before the erection of the plaintiffs' furnace—that the dam in question was erected about twelve or fourteen years previous to its going off—that it was built substantially, and was safe and secure as dams in general—that it was kept in repair—that a new bulk-head was built four or five years before it went off, and that the dam was repaired by putting on gravel the year before, and other repairs made to the floom—that when the water was high, the gate was hoisted, and water let off—that the dam was not more dangerous than dams in general—that, altho' damage had been apprehended the spring previous, it was not considered at this time as dangerous—that the day before the dam gave way, water was coming into the pond fast; the gate was hoisted—that at this time, the water probably broke through on the west side of the pond, where no one had apprehended danger or insecurity at any time—that the mill of the defendant was carried off at the same time, and the main channel is now

nearly under where the mill stood—that one of the plaintiffs had said that he did not expect the mill would go off at that time—that another of the plaintiffs had said that he thought the water went off under the mill, and never suspected that it would break through under the mill—that another of the plaintiffs had said that he did not consider the defendant to blame, or that he had told another that he, the defendant, was not to blame, and that he would not consent to bringing the suit until the very last.

The defendant then offered testimony to prove, that the plaintiffs, when they erected the furnace, considered that danger was to be apprehended from the dam, and that they should have to repair it to secure thir works; which was objected to, and excluded by the Court.

The defendant introduced Pratt Curtis as a witness on his part, to whose admission the plaintiffs objected, on the ground that all the real estate of the defendant, in Dorset, was attached, including the mill site, and was still holden on the plaintiffs' writ, and that since the commencement of the suit, the said Pratt had purchased of the defendant his saw-mill site, and a part of his other real estate in Dorset. The only evidence to support the objection was, the attachment, and the said deed of conveyance, marked A : both of which are referred to, and made part of the case.

The Court overruled the objection, as the evidence did not show any interest in the event of this cause. To which decision of the Court, the plaintiffs excepted.

The plaintiffs contended to the jury, and requested the Court to instruct them in charge, that the party erecting a mill-dam, and thereby raising a water power, is bound to use reasonable and ordinary care and prudence in its construction, considering the quantity of water raised, and the condition and character of the property on the same stream below ; and that after it is constructed, he is bound to use reasonable & ordinary care, seeing that the same is kept in reasonable and ordinary repair ; and that if the same should become insufficient and dangerous, he is bound, on knowing the same, with reasonable and ordinary diligence to put said dam in reasonable and ordinary repair, or draw off the water ; and for the want of reasonable and ordinary care and prudence in the original construction of said

Bennington,
February,
1833.

Lapham et al
vs.
Curtis.

dam, or in the repairing or keeping in repair the same, the said dam by reason of the insufficiency thereof (there being at the time no extraordinary flood of water) should give way, to the injury of the property of those below, the party so neglecting would be liable for all the damages thereby sustained.

The defendant contended and requested the Court to charge the jury that unless the defendant was guilty of gross negligence either in building or neglecting to repair the dam so as to manifest a mischievous intent on his part he would not be liable in this action.

1st. The Court charged the jury that a person erecting a Mill Dam, and thereby collecting a pond of water, must erect it in a careful and prudent manner, and make it secure so as not to subject the owners of property below to any great danger ; that the erection of a dam and collecting a body of water, would necessarily subject them to an increased hazard, but this could not be avoided, but was incident to property situated on a stream of water on which were Mill Sites. That whenever a person erected a dam, regard must be had to the situation of the property below at the time it was erected, that if but little or *no property* below would be exposed to damage at the time such dam was erected, less care would be required of the person erecting the same, and that the person building it would be justified in building a dam of less strength and at a less expense than would be required, if buildings and machenery to a great amount were then standing on the stream below and would thereby be exposed to an increased danger by collecting the pond, but it must be so constructed as not to be manifestly insufficient and dangerous to those below.

2d. That the duties and liabilities of the party erecting such dam, would not be increased or enlarged by any one erecting mills or machinery below, after such dam was built. That if those below considered the dam above insufficient and dangerous, and should request permission to repair the same, and the owners of the dam should refuse such permission, it might be considered as a wanton refusal on his part, and subject him to damages for any injury sustained by such insufficiency. that a notice by the owners

below to the owners of the dam of the insufficiency there-of and a request to repair the same would not lay him under any additional obligation to repair the same and would have no other effect except as it might be evidence of his knowledge of such insufficiency.

BENNINGTON, February, 1833.

Lapham et al vs Curtis.

3d. The Court further instructed the jury, that if the dam, after its erection should get out of repair and become manifestly insufficient and imminently dangerous, it would be the duty of the owners to repair the same—but if it became manifestly insufficient and manifestly dangerous and that was known to the owner, and in consequence of such insufficiency should break away and injure those below, the owner would be liable for the damages occasioned thereby. That if the jury believed that this dam was or had become dangerous and insufficient as above stated, and that known to the defendant, and he had neglected to repair the same, and in consequence of such insufficiency the dam had broken away and occasioned the injury to the plaintiffs, they would return a verdict for the plaintiffs for the amount of the damages which they had proved; but if they did not believe that the dam was manifestly *insufficient* and dangerous, or if they believed that it broke away in a place where it was generally considered as safe and secure, and from which no danger was apprehended, and where the defendant had no knowledge of its insufficiency, no recovery could be had by the plaintiffs, although they should believe it was insufficient in other places. The plaintiffs excepted to the charge of the Court as well as to the decision of the Court admitting the testimony of Pratt Curtis, and prays that the exceptions may be allowed, and the case pass to the Supreme Court.

*Bennett & Aiken, for plaintiffs.*—Is Pratt Curtis a competent witness? The writ in the present action shows the whole real estate of the defendant, lying in Dorset, attached at the suit of the plaintiffs.

The deed from Joseph Curtis, the defendant, to Pratt Curtis, shows the mill site and other real estate of the defendant, being also part of the property attached, to have been conveyed after attachment by said Joseph to said

BENNINGTON,
February,
1833.
―――――――
Lapham et al
vs.
Curtis.

Pratt for a valuable consideration, with covenants of war-ranty, reserving a life estate to said Joseph and his wife in the use.

By the attachment, a lien was fixed on the land attach-ed, in favor of the plaintiffs. The land is thereby taken and secured in pledge to satisfy the judgement which may be recovered in this action; though this lien cannot in strict propriety be called an estate in the land, yet it is an incumbrance on the land, and is so regarded by the Stat-ute.—Comp. Laws, p. 109.

Pratt Curtis then has a direct interest to release his land from this incumbrance, and that is the object and effect of his testimony. There, then, is a direct interest which will exclude him, be that interest ever so small.

Again, To apply another test of interest, the verdict in this case may be used in an action of ejectment hereafter to be brought by the plaintiffs against Pratt Curtis for the same lands.—4 Binney, 83.—2 John R. 394.—7 Com. Dig. 470.—Phil. Ev. 44–46.

This is not a contingent interest, but it is a direct inte-rest already fixed. The lien is now perfect, and the tes-timony of the witness goes to defeat it. Suppose the in-cumbrance had been created by mortgage instead of at-tachment, could Pratt Curtis be a witness to prove the mortgage debt paid, in an action on the personal security? In that case, as in this, it might be said to be doubtful whether the plaintiffs would resort to the lands pledged.

The interest of Pratt Curtis is not balanced by his cov-enant of warranty. This puts him precisely on the same footing of bail. A contract of indemnity from the princi-pal or from back-bail, cannot neutralize the interest of bail. A present certainty is not balanced by a future pos-sibility.—3 East. 7, Owen vs. Mann.—2 Day's Rep. 399.

The remaining questions arise on the charge of the Court.

We object to the charge—

1st, Because it requires only that a dam should be so built as not to be manifestly insufficient and dangerous to those below.—2 Aiken, 184.—1 Swift, 111.

2d, Because it makes it the duty of the owner to repair

only when his dam has become manifestly insufficient and imminently hazardous. And,

3d, Because it denies that any increased care or vigil- ance, on the part of the owner, is required upon any change subsequent to the erection of the dam in the amount of consideration of the property below.

The term "*manifest,*" means *obvious, view clearly, apparent, plain;* and as used by the Court, presupposes no examination for the purpose of discovering defects.

The word "*imminent,*" from its etymology, as well as its approved use, means *threatening, impending, ready to come, near at hand, hanging over, approaching.*

We claim that the standard of duty and obligation thus set up by the Court in the charge, is too low,—that in the original erection of a dam, as well as in its subsequent reparation, the law will be satisfied with nothing short of *ordinary care, vigilance and prudence.* The term we here use, as it is used in Jones, in his Treatise on Bailments, pages 9 and 10.

It requires no argument to show that reasonable and ordinary care and prudence is of a character decidedly superior to that required by the charge of the Court; for this would require a man to erect a dam apparently sufficient, and would require him to repair it before danger had become "impending, near at hand, ready to come, threatening." None but very careless and inattentive men would pursue the course sanctioned and approved by the charge of the Court.

It is an elementary principle—a maxim of the law, that *every person must so use his own property as not to injure the rights of others.* The right to use water, is one of great value and importance; and for ought that can be discovered to the contrary, falls within the same principle. The party over whose land water flows, must use it in a reasonable manner, so as not to destroy, or render useless, or materially diminish, or affect the application of the water by the proprietors below. He must not shut the gates of his dam and detain the water unreasonably, or let it off in unusual quantities.—3 Kent. Com. 354.—2 N. H. Rep. 537, and cases there cited.

BENNINGTON,
February,
1833.

Lapham et al
vs.
Curtis.

It is a general principle that negligence of one's own property, or in the exercise of one's rights, in consequence. of which another suffers damage, will subject the negligent party to an action·

Thus animals of a dangerous nature, or accustomed to do mischief, must be restrained by their owner, or he will be liable for all the damages.—1 Com. Dig. 418.

Fire must be kept with care—otherwise the negligent party is liable for all damage it occasions. True, in case of accidental fire, the action is taken away by Stat of Ann. 1 Com. Dig. 419.

Yet when *negligence* is the cause of the injury, action lies as at Common Law.—8 John. Rep. 421.

Tenant for life or years, negligently permitting buildings, fences, ditches or embankments to become ruinous, to the injury of him in reversion or remainder, are liable.—Coke Litt. 53–54.

If I neglect to repair my partition-wall, whereby the filth of my privy flows into my neighbor's cellar, I am liable.—1 Salk. 21.—6 Mod. 311.

If I neglect to keep in repair the grate or bars that cover an opening into my cellar or vault, and my neighbor falls through, action lies·

Negligence in driving a carriage or team upon the highway, or navigating a ship or other vessel upon the seas, to the injury of others, lays the foundation for an action for all damages.—3 East. 593.—Sel. N. P. 456-9.—1 Camp. 497.—8 T. R. 188.—Sw. Dig. 551.

The general rule to be extracted from all the cases, is, that the want of reasonable and ordinary care and prudence *at the least* in the management of one's own business, in consequence of which another suffers damage, subjects the negligent party to an action.

The same doctrine must obtain in regard to negligence in the use of water.

Public policy and private interest both require the adoption of the principle for which we contend.

The cases cited in regard to the use of this right, show no distinction in this respect between this and other property.

The same doctrine is virtually established by adjudged cases.—2 John. R. 284.—17 John. R. 92.

If this reasoning be correct, it covers all the points noted as erroneous in the charge.

*L. Sargeant,* contra.

The opinion of the Court was pronounced by

BAYLIES, J.—The record shows what evidence the plaintiffs introduced to support the issue on their part; also the evidence which the defendant introduced. If the jury found the facts which the defendant's evidence tended to prove, what is the operation of law upon these facts? Before I attempt to answer this question, I will state the law as it is generally understood in *England,* and in the United States. In the case of *Barber* vs. *Shaw et al.* 6 East. 208, the Court say, an adverse right may exist founded on the occupation of another. And though the stream be either diminished in quantity, or even corrupted in quality, as by means of the exercise of certain trades, yet if the occupation of the party so taking, or using it, has existed for so long time as may raise the presumption of a grant, the other party whose land is below, must take the stream subject to such adverse right. I take it, that twenty years exclusive enjoyment of the water in any particular manner, affords a conclusive presumption of right in the party so enjoying it, derived from grant, or act of Parliament.

*Swift,* Ch. J., says, " A special right, different from the general one, may be acquired by an adjoining proprietor, by grant, or by possession for such length of time as will furnish presumptive evidence of a grant. In England, it has been decided, that twenty years exclusive enjoyment of water in a particular manner, affords a conclusive presumption of a right in the party enjoying it, derived from some individual having the power to make it, or from the Legislature ; and in this State, fifteen years exclusive enjoyment will furnish the same evidence. Such exclusive right, however, must be measured and limited by the extent of its enjoyment, and the occupier can no more enlarge it, than he can assume a new right."—*Ingraham* vs. *Hutchinson,* 2 Con. R. 584.

Mr. *Angell,* in his valuable Treatise on the Common

*BENNINGTON,
February,
1833.*

*Lapham et al
vs.
Curtis.*

BENNINGTON, February, 1833.

Lapham et al vs. Curtis.

Law, in relation to *Water Courses*, page 42, says, "The privilege of using the water in any particular manner, and of diverting it in any quantity, may also be acquired by *usage;* which, when continued without interruption for a great length of time, has all the validity and effect of an express grant." He refers to 2 Vernon, 390, and Sull. on Land Tit. 273. In page 44, he says, "The principle of acquiring a right to incorporial hereditaments by an enjoyment of twenty years, is derived from the Statute 21 Jac. I, which enacts that no person shall make entry into lands, but within twenty years next after his right or title shall first descend or accrue to the same." He also says, "If a water-course is in any way diminished in quantity, yet if the occupation of the party taking and using it, has existed for twenty years or more, the party whose land is below, must take the stream subject to the *adverse right.*" In page 48 he says, "The *usage,* which is thus supposed to be founded on a grant or agreement, will determine the extent of the supposed grant. The right granted, is considered to be commensurate with the right enjoyed. A person, who has enjoyed a limited right, cannot lawfully enlarge it to the detriment of others; and in case of such enlargement, those who are prejudiced may lawfully obstruct the use in the *newly acquired* part; but still he will be entitled to his former right, both to the same extent, and in the same specific manner."

Chancellor *Kent* (3 Com. 356) says, "The general and established doctrine is, that an exclusive enjoyment of water or of light, or of any other easement in any particular way for twenty years, without interruption, becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person, which might have been, but was not asserted. The right is confined to the extent, and the mode of enjoyment during the twenty years. All that the law requires is, that the mode or manner of using the water should not be materially varied to the prejudice of other owners; and the proprietor is not bound to use the water in the same precise manner, or to apply it to the same mill; for such a construction of the rule would stop all improvements in machinery. He is only not to vary the enjoyment to the prejudice of his neighbor."

BENNINGTON,
February,
1833.

Lapham et al
vs.
Curtis.

If it be true that the defendant " erected a mill-dam up-
on the same site which he had owned above forty years a-
go, and more than twenty years before the erection of the
plaintiffs' furnace—that the dam in question was erected
about twelve or fourteen years previous to its going off—
that it was built substantially, and was safe and secure as
dams in general—that it was kept in repair, &c.," as the
evidence tended to prove; then the defendant acquired
certain rights : that is, by a *usage* of forty years he acqui-
red the right to have, and support a dam across said stream,
and to raise the water to a certain height. And also by
forty years exclusive enjoyment of the water in the pond,
raised by said dam, he acquired a right to the use of the
water in future, as he had used it in time past. In analo-
gy to our Statute of Limitations, these rights were perfect-
ed after the lapse of fifteen years. And notwithstanding
these *rights*, the defendant's duties and liabilities might be
greatly increased by other persons' erecting mills on the
same stream. Before the plaintiffs erected their furnace,
the defendant, if he injured no person above nor below
him, might raise the water in the pond to any height he
pleased, and might suffer his dam to decay, till the water
crushed it, and went off in a body. But after the plaintiffs
erected their furnace below on the same stream, the de-
fendant could not lawfully raise his dam above its usual
height so as to lessen the flow of water to the plaintiffs'
furnace ; nor suffer his dam to decay, break down, and let
off all the water at once, to the injury of the plaintiffs.

But the defendant was subject to the maxim, *Sic utere
tuo ut alienum non lædas.* To comply with this requisition
of the common law, it was the duty of the defendant to
have used ordinary care and diligence in making repairs
to his dam ; or in drawing off the water from his pond, to
prevent injuries to the plaintiffs' furnace. If the defend-
ant did not use this care and diligence, he was guilty of
negligence, and liable for consequential damages ; but he
was not liable for *inevitable accidents.*

After the defendant's land was attached in this suit, he
deeded a part of the same land, with the attachment there-
on, to *Pratt Curtis,* whose interest it was to remove this in-
cumbrance from the land. With this interest existing,

*Pratt Curtis* was not a competent witness to testify for the defendant.

Inasmuch as the County Court admitted said witness to testify on the part of the defendant, and instructed the jury contrary to the aforesaid principles of law, as to the defendant's *duties* and *liabilities,* the judgement of the County Court is set aside, and a new trial granted.