UNITED STATES *v.* SWEDISH PRODUCE Co. (No. 1016).[1]

1. AMOUNT OF DUTIES ON REVIEW.
    The customs administrative law, subsection 14, vests jurisdiction in the Board of General Appraisers to review the decision of any collector of customs as to "the rate and amount of duties chargeable upon imported merchandise."—United States *v.* Benjamin *et al.* (72 Fed., 51).

2. MANIFEST CLERICAL ERROR, WHAT IS NOT.
    It appears that the facts establishing the undervaluation of this merchandise were known to the importers at the time the entry was made. In view of the importers' knowledge the undervaluation does not present a case of manifest clerical error.

United States Court of Customs Appeals, May 12, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29501 (T. D. 32760).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, on the brief), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal by the United States from a decision of the Board of General Appraisers sustaining a protest alleging manifest clerical errors in the invoices. The importation was of Swedish caviar at Newport News and forwarded thence in bond to Chicago, where it was entered for consumption. The invoices used on entry were made out on the form designated as "special invoice of food and drug products." Bond was given for the production of a duly certified invoice, which, in so far as the evidence shows, was not produced. Fifty per cent was added by the appraiser to make market value. A private invoice was produced at the hearing showing market value 50 per cent greater than the entered value. No appeal was taken to reappraisement. Duty was assessed by the

---

[1] Reported in T. D. 33437 (24 Treas. Dec., 801).

collector in an amount based upon this valuation, and additional duties amounting to $110.50 were assessed under subsection 7 of section 28 of the customs administrative law.

There are several claims made in the protest, but the only one of serious merit is that which challenges this action of the collector upon the following grounds:

Additional duty should not have been assessed, because the advance in value, as made by the appraiser, was due to manifest clerical errors in the invoices.

The applicable provisions of the statute, subsection 7 of section 28 of the customs administrative law, read:

Sec. 7. * * * If the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry: * * *. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, * * *.

There was no brief for the importers.

Two questions are raised by the Government on appeal.

The first claim made by the Government is that the Board of General Appraisers has no jurisdiction in such cases. We are unable to sustain this contention. The customs administrative law, subsection 14, vests jurisdiction in the Board of General Appraisers to review the decision of any collector of customs as to "the rate and *amount of duties* chargeable upon imported merchandise." No argument is necessary to demonstrate that the question here involved affects the amount of duties charged upon imported merchandise by virtue of a decision of the collector of customs at the port of Chicago.

The customs administrative law, notwithstanding several attempts to so amend it, does not prescribe any other remedy open to an importer whereby such a decision of the collector may be reviewed. The general provision provided by subsection 14 of the customs administrative law, therefore, is clearly applicable. This is the view heretofore taken by the courts, after a pronouncement of the decisions of which these provisions of the customs administrative law have been reenacted *in hæc verba*. United States *v.* Benjamin *et al.* (72 Fed., 51); Gillespie *et al. v.* United States (124 Fed., 106).

The second point urged by the Government is, that inasmuch as the invoice and entry and papers necessarily before the appraiser at the time of the appraisement and the collector at the time of his decision, as required by the statute, did not show or manifest upon the face of them the claimed error that such is not a case of manifest clerical error. It will be noted that subsection 7, *supra*, authorizes the remittance of such additional duties as accrued under the earlier

part of the subsection "in case of manifest clerical error." The Board of General Appraisers did not find or address the remedy afforded the importer in their decision to a *manifest* clerical error. The decision is predicated upon clerical error. Obviously there is a broad distinction between clerical error and manifest clerical error. In this case the distinction is statutory, affording a remedy for the latter, but not for the former.

What constitutes a manifest clerical error, as distinguished from clerical error in the generic sense of the term, has been frequently the subject of adjudication. In Hermance *v.* Ulster Co. Suprs. (71 N. Y., 481–485–486), the court said:

The errors which may be corrected are "manifest" errors; not errors which may be shown to have been committed by extrinsic evidence or may be proved to the satisfaction of the court. * * * But "manifest," as used here, means something which is apparent by an examination of the assessment roll or return, needing no evidence to make it more clear.

The Supreme Court of Vermont defines manifest as "obvious, view clearly, apparent, plain." Lapham *v.* Curtis (5 Vt., 371–377).

Indeed, we need not go beyond adjudications upon the precise provision of the customs administrative law. A long and consistent line of decisions upon this subject, typical of which is Magnus & Lauer *v.* United States (160 Fed., 281), affirmed upon appeal by the United States Circuit Court of Appeals for the Second Circuit (166 Fed., 1020), affirming a decision of the Board of General Appraisers, G. A. 184 (T. D. 10534) laid down the definition as "visible to the eye," or "obvious to the understanding." See also Morimura Bros. *v.* United States (160 Fed., 280); Lawder & Sons *v.* Stone (125 Fed., 809); Roebling *et al. v.* United States (77 Fed., 601).

This view of the case is well supported by the exigencies of a reasonable and expeditious enforcement of the customs administrative law. The reason of the rule is based upon three logical sequences. First, if relief under said subsection 7 is confined to those cases where the error must appear upon the face of the papers to be sent to and which are before the appraiser and the collector at the time of the appraisement and decision thereupon, respectively, it negatives any fraud upon part of the importer. Second, it gives relief in those cases only which call the attention of the appraising officers to the correct valuation of the merchandise, thereby affording them opportunity at the time of the appraisement and decision thereupon to affix the correct market value of the merchandise. Third, any rule which permits this provision of the statute to be extended to those cases not obviously made apparent by the papers to the eye of the appraiser and collector, and resting the case upon the possibility of proof *dehors* said record, must put a premium upon fraud or attempted frauds upon the revenues. It is contrary to our understanding of the word "manifest," as used in the common parlance, which requires something obvious or exposed to view.

The reasons supporting this view, as stated, are illustrated in this case. No error was apparent upon the face of the invoice or the entry. The items are duly set forth on the invoice and the amounts extended are correct according to the quantities and unit prices specified with the description of the merchandise. The total values were carried into the entry exactly as invoiced. The hearing developed a private invoice in the possession of the importer showing, as stated, that the goods had been entered 50 per cent below the private invoice price and their actual market value, as subsequently conceded by the importers. Presumably, and we think it is clearly established by the evidence in this record, this private invoice was in the possession of the importer at the time the entry was made. This invoice and that in the possession of the collector, upon which the entry was made, bear unmistakable evidence of having been written at the same time by the same parties. The importers testified at the hearing that the private invoice was in his possession, and produced it. We think a fair reading of this record well warrants the conclusion that the facts establishing the undervaluation of this merchandise were in possession of the importers at the time of entry. Such does not, to say the least, present a case of manifest clerical error. The facts in the case, however, illustrate the probable results which would follow the construction of subsection 7 as is herein invoked.

The decision of the Board of General Appraisers is *reversed.*