UNITED STATES *v.* RIVERS (No. 2028).[2]

1. MANIFEST CLERICAL ERROR.

 Under paragraph I, section III, tariff act of 1913, manifest clerical error needing to be shown by proof dehors the record can not exist. United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 32760). When an entry is made as the entrant intends to make it and carries the intended signification to the mind of the collector, there is no manifest clerical error.—United States *v.* Wyman (4 Ct. Cust. Appls., 264; T. D. 33106).

2. AMENDING ENTRY, TIME FOR.

 An importer can not, after either the invoice or the merchandise has come under the observation of the appraiser, make additions in the entry to or deductions from the cost or value given in the invoice.—Consmiller *v.* United States (10 Ct. Cust. Appls., 109; T. D. 38373).

---

[1] T. D. 38021 (40 Treas. Dec., 77).  [2] T. D. 38022 (40 Treas. Dec., 77).

3. EVIDENCE—ESTOPPEL TO DENY AUTHORITY OF AGENT TO MAKE ENTRY.

One who accepts an entry made by another and confirms the authority by which it was made by attempting to have it corrected, instead of disavowing it, the protest not questioning the authority, can not later be heard to·deny it.

4. CLERICAL ERROR.

Merchandise was shipped from Montreal, Canada; to be entered at Rouses Point, N. Y., for transportation to New York, N. Y. The agent of the carrier made, from the invoice, a consumption entry at Rouses Point, very greatly understating the value, the underestimation arising from a misapprehension as to whether the invoice stated the price in francs or dollars. No disavowal of the entry was made, but an attempt was made to correct it. The collector refused to permit the correction for the perfectly ·legal reason that the application was received after the invoice and merchandise had come under the observation of the appraiser. Whereupon protest was made by importer's agent claiming manifest clerical error under paragraph I, section III, tariff act of 1913. There is no such clerical error, as its showing depends upon evidence outside the record.

## United States Court of Customs Appeals, February 4, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43548.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

*Jules Chopak* for appellee.

[Oral argument Oct. 29, 1920, by Mr. Hanson and Mr. Chopak.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The facts in this case, as we understand them, are as follows:

On the 24th day of December, 1918, Lymans (Ltd.), of Montreal, Canada, delivered to the American Railway Express Co. a quantity of Esperia essential oil consigned to V. Vivaudou (Inc.) at New York City. The shipment was by way of Rouses Point. Mr. Kercher, a customhouse clerk for Lymans (Ltd.), on the 19th day of the same December, made an invoice of the merchandise as purchased by V. Vivaudou (Inc.) from Lymans (Ltd.). The invoice stated the quantity to be 31.25 kilograms; the price per unit to be 9.46; the total amount $295.63, plus a duty of 7½ per cent; described the goods as made in France, and contained the words, "In bond. For immediate transportation without appraisement." Thereon in red ink are entries made by customs officials as follows:

Rouses Point, N. Y.,
Jan. 28-1919.
Appraised at $48.25 per kilogram $1,507.81.
20% Par. 49.
N. S. Ladd, Appraiser.
Jan. 28, 1919.
Quantity correct and value noted.
W. S., Inspector.

This invoice was duly certified by the American vice consul December 19. The declaration of the. purchaser, among other things, stated that "it is intended to make entry of said merchandise at the

port of N. Y." In due course it reached Rouses Point and there was entered for consumption on the 27th day of December by George F. Rivers. His entry stated the value of the merchandise to be $296, the rate to be 20 per cent, and the duty $59.20. The red-ink notations thereon showed that the appraiser appraised the merchandise at $1,508; stated the duty to be $301.60; the increased duty, $242.40; the additional duty at 75 per cent to be $1,131; totaling $1,373.40; and that it was advanced 409 per cent.

Mr. Rivers was called as a witness on behalf of the importer, and testified without contradiction that he was agent for the American Railway Express Co. at the date he made the entry; that he had no personal knowledge of its value at that time, and no request or authority from Vivaudou to make the entry; that he acted as broker for the express company and handled shipments coming through that port destined to the United States; that the reason why he made the consumption entry was, that "the American Railway Express Co. has issued instructions to my office not to handle shipments for immediate transportation to New York only on account of the congestion down there;" that prior to January 28, 1919, he had no conversation with the appraiser or the customs authorities respecting the value of the consignment; and that the first he knew of any question about it was when he got the notice of advance.

On January 3, 1919, Vivaudou wired and wrote Lymans (Ltd.) that the price stated in the commercial and consular invoices should be $48.25 instead of $9.46 per kilo, asking them to make new commercial and consular invoices, and immediately give the custom ouse at Rouses Point the necessary data to release the goods.

On the following day Lymans (Ltd.) complied with this request by inclosing to the collector at Rouses Point a corrected invoice, stating the unit value to be $48.25 per kilo, amounting to $1,507.81, to which it added what was evidently a Canadian duty of $7\frac{1}{2}$ per cent, amounting to $113.10, aggregating a total value of $1,620.91, with the following words below the description of goods: "Made in France. Bond."

On January 14, 1919, Vivaudou wrote to the collector at Rouses Point, among other things, stating the date of shipment from Montreal; that on account of the error in the consular invoice the goods had been detained at Rouses Point; that a customhouse inspector had been to see them to investigate as to the correct price of the goods, concerning which they had given him a bill from their principals in France; and that, inasmuch as the original invoice was stamped for immediate exportation without appraisement, they could not see why the goods were detained.

On the 15th of January a deputy collector at Rouses Point wrote to Vivaudou acknowledging receipt of the above letter, advising Vivaudou that the goods were entered for consumption December

27, 1918, at a valuation of $296 and held for appraisal; that about January 5, 1919, a corrected consular invoice had been received from Lymans (Ltd.), giving the value, including the Canadian duty, to be $1,620.91; that on January 12, Rivers, agent of the express company, had made application to amend the entry, explaining how the error was made; that as his office had no authority to amend entries it had been submitted to the collector of customs at Ogdensburg, N. Y., who doubtless had submitted it to the department, but whether the department would authorize the amendment the writer was unable to say; that if not, the shipment would bear an additional duty, which would be 75 per cent of the appraised value, and an increased duty, and the merchandise subject to seizure; and that it would be held until the department's reply was received.

Thereupon, on January 22, Vivaudou wired the collector of customs at Ogdensburg to expedite the shipment.

On January 24 the collector at Ogdensburg wrote Vivaudou that the department at Washington, to which the matter had been referred, held the amendment could not be made, because it appeared that the application therefor was filed subsequent to the time the invoice and merchandise had come under the observation of the appraiser.

The entry was liquidated July 25, 1919. Some time thereafter the assessed duties were paid, and on August 18 following a protest was filed in the name of Rivers, agent for Vivaudou, ultimate consignee, alleging that a manifest clerical error was committed in the invoice and entry of the merchandise, by reason of which no increased and additional duty should have been assessed.

The corrected invoice from Lymans (Ltd.) to the collector at Rouses Point, as shown by the foregoing correspondence, was not forwarded by the collector to the Board of General Appraisers with the protest, but was produced at the hearing by the importer, and considered by the board. This invoice was also made by Mr. Kercher, who testified that the $295.63 entry in the first invoice was wrong. Explaining the error, he said:

In sending down the papers for entry there was no dollar and cents sign to the invoice. The shipment came from France, in the first place, and was made out in francs. Not knowing that this was the figure, that the amount was sent down to me to make the invoice from was made out in dollars and cents, I took it for granted it was still francs, and converted that into Canadian money. * * * The figures should have been 31.25 kilograms, at $48.25 per kilogram. * * * $1,507.81.

It appeared from his testimony that 48.25 francs would equal $9.26 Canadian money: that upon receipt of the telegram and letter from Vivaudou under date of January 3, above referred to, he made out for Lymans (Ltd.) the corrected invoice in accordance with the request of Vivaudou, and forwarded it to Rouses Point. This corrected invoice contained a correct statement of value, as already appears.

As we understand, there is no disagreement that before this corrected invoice was furnished the original invoice and merchandise

had come under the observation of the appraiser, and he had started an investigation to determine the correctness of the invoice and entered value. He did not, however, conclude the appraisement until afterwards, and in fact appraised the merchandise at the value stated in the corrected invoice, upon which the entry was liquidated.

Upon these facts the Board of General Appraisers impressed, as we are, that the payment of the liquidated amount imposed a great hardship upon the importer, sustained the protest and directed the collector to reliquidate the entry, omitting therefrom the assessment of additional duty, from which judgment the Government appealed.

It is unnecessary to discuss the qustion of manifest clerical error. In United States v. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 32760) we held that it could not be established by proof dehors the record. In United States v. Wyman (4 Ct. Cust. Appls., 264; T. D. 33106) it was held that when an entry was made just as the entrant intended, and carried the intended signification to the mind of the collector, manifest clerical error was not established.

In the case of Consmiller v. United States (10 Ct. Cust. Appls., 109; T. D. 38373) many of the cases upon this subject are collated and may be referred to.

We attach no importance to the corrected invoice, because it clearly appears that the application to amend the entry pursuant thereto was not made in time. The obvious purpose of amending was to raise the entered value. In the Consmiller case we held, in view of the express language of paragraph I of section 3 of the act of 1913, that an importer can not, after either the invoice or the merchandise has come under the observation of the appraiser, make additions in the entry to or deductions from the cost or the value given in the invoice, and we are still of opinion that the statute expressly so prohibits.

If it could be regarded that the entry was made by Lymans (Ltd.) and proof dehors the record be considered, the testimony of Mr. Kercher shows that he made the figures upon the invoice just as he intended them to be, and there is no claim that Rivers, in making the entry, did not place therein the figures that he intended, or that in either case the intended signification was not correctly carried to the mind of the collector.

The importer's counsel further contends that the fact that Rivers made a consumption entry without any authority, and contrary to the statement contained in the consular invoice that the goods were "for immediate transportation without appraisement" constitutes a manifest clerical error. In support of this contention early decisions reported in Federal cases are cited. He urges that an error not attributable to the real importer. but to what he characterizes as

the act of "an unauthorized intermeddler" warrants us in sustaining the protest upon the ground of manifest clerical error.

Some of the cited cases are, as to the facts, quite analogous to this, but a comparison of the statutes then and now in force leads us to the conclusion that they are inapplicable.

If, when knowledge that an unauthorized consumption entry had been made was brought home to the interested parties, it had been disavowed, and an entry for transportation in bond been tendered, it is likely this case would not have arisen. It can not be assumed that the proper entries would have been refused, and the importers compelled to proceed under the unauthorized entry, because that would seem to savor of duress. Vivaudou, however, knowing all the facts, appears to have adopted the consumption entry made by Rivers, and is now litigating the liquidation made thereunder in his name as their agent. This seems to render the claim that he was "an unauthorized intermeddler" somewhat inconsistent. However this may be, the protest is definitely confined to a claim for relief upon the ground of mainfest clerical error. We think it is not such.

There is no claim of bad faith or of an attempt to defraud the Government, and Vivaudou apparently has been compelled to pay money which in justice ought not to have been demanded. Equitably reimbursement from some source ought to be made, but we are powerless to grant relief.

The judgment of the Board of General Appraisers is *reversed.*

### CONCURRING OPINION BY DE VRIES, JUDGE.

It seems to me that this case upon proper protest could well be ruled by Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 21007), and particularly on rehearing, at page 478.

The basic facts of this case are *in principle* the same. The entry herein was made without knowledge of the owner of the goods by one who was not in any way constituted as agent, and *in violation of the declaration upon the papers* "that it is intended to make entry of such merchandise at the port of New York." Such an entry, in that it is unauthorized, is without any force or effect unless it should have been adopted and approved subsequently by the owner of the goods. This does not to me seem to have been done in this case. On the contrary, another entry was offered, or at least permission was asked to file another and amended entry. The office of an amended pleading, such as offered in this case, is to introduce and make relevant as an issue in the case a subject matter not included in the original pleading. While this form of pleading preserves the status of appearance in the case it implies disapproval rather than affirmance of the original.

The doctrine of the cases cited is that where the entry is illegal,. the appraisement and the liquidation are illegal. In such cases, this court can direct that duty be taken upon the invoice value of the goods, which in this case is the correct value. That point was particularly discussed in Stein v. United States (1 Ct. Cust. Appls., 478; T. D. 31525). Obviously without fault of the importer he is in this case being assessed in severe penalties—a thing which ought not to be approved by this court if it can be avoided and on due protest herein could be avoided.

I concur fully, however, with my colleagues herein that this protest, counting solely upon manifest clerical error, is not sufficient to raise the stated issues.

### CONCURRING OPINION BY SMITH, JUDGE.

I concur in the conclusion reached, on the ground that the authority to make the entry at Rouses Point was not questioned or raised by the protest.