UNITED STATES *v.* GORDON & FERGUSON (No. 1576).[1]

CLERICAL ERROR, WHAT NOT MANIFEST.

> Where the consular invoice for goods imported from Hongkong stated the total value in three currencies—correctly in pounds sterling but incorrectly in gold dollars and Tientsin taels—not one of the three agreeing by the proper rate of exchange with either of the others, and the entrants adopted the statement in Tientsin taels and declared its equivalent in gold dollars, they can not escape the payment of the additional duty imposed by section 3 of paragraph I, tariff act of 1913, by claiming a manifest clerical error.

United States Court of Customs Appeals, December 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 37887.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Leland W. Wood*, special attorney, of counsel), for the United States.

No appearance for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in the present case consisted of 16 bales of dog-skin mats which were imported into this country from Hongkong under the tariff act of 1913. It is conceded that the goods were dutiable as assessed, and the sole issue in the case relates to certain additional duties which were imposed by the collector because of an undervaluation of the merchandise in the entry.

In paragraph C of section 3 of the tariff act of 1913 it is provided that "all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importations shall be made, or, if purchased or agreed to be purchased, in the currency actually paid, agreed upon, or to be paid therefor." The present merchandise was purchased in China for the importers, and was

---

there paid for in British currency in the sum of £995 15s. That sum, therefore, should have been stated in the consular invoice as the total value of the merchandise. Instead of this, however, the total value of the merchandise was stated therein in a threefold manner, first in gold dollars, second in British currency, and third in Tientsin taels, in the figures following, viz: G., $4,859.26; £995 15s.; T., 6,649.88. The statement thus given in British currency correctly expressed the amount which was actually paid in China for the merchandise, but the alternative statements in gold dollars and in taels do not agree in value with that given in British currency, nor do they agree with each other. Acting under statutory authority (sec. 25 of the act of Aug. 27, 1894) the Secretary of the Treasury on October 1, 1913, in T. D. 33758 published the values of foreign coins in terms of United States money, fixing the value of a British pound at $4.8665 and of a Tientsin tael at $0.691, and this rate of exchange was in full force at the time of the present transactions. Accordingly, the three nominal values of the merchandise which were separately stated in the invoice might be carried out as follows: First, $4,859.26; second, £995 15s. (being $4,845.81) ; and, third, 6,649.88 taels (being $4,595.06). It thus appears that the total value as stated in gold dollars was $13.45 higher than the true value, while the total value stated in taels when correctly reduced to gold dollars was $250.75 less than the true value.

An entry of the merchandise for immediate consumption was made by the importers' brokers at the port of St. Paul. In declaring the value of the merchandise in the entry the entrants adopted the erroneous statement in taels which appeared in the consular invoice, deducted various nondutiable items therefrom, and thereupon converted the remainder into gold dollars at the rate of exchange prescribed by the Secretary of the Treasury. This computation produced the sum of $4,069, and that sum was thereupon declared by the entrants to be the net dutiable valuation of the merchandise.

The appraiser, in the discharge of his official duties in the premises, approved as correct the statement of total value appearing in gold dollars in the consular invoice, viz, $4,859.26, and reported that fact to the collector, over his signature, upon the consular invoice itself. No appeal to reappraisement was taken by the importers.

The collector, thereupon, acting upon the entry, the consular invoice, and the appraiser's notation thereon, found that the true net dutiable value of the merchandise was in the sum of $4,361.40, being $292 more than the value declared in the entry. This difference resulted in part from the understatement of value appearing in the entry as above explained and in part from the disallowance of a deduction which had been claimed by the importers. The collector accordingly not only assessed duty upon the increased value thus found by him, but also assessed additional duty in the sum of

$303.31 under section 3 of paragraph I of the tariff act of 1913, the relevant parts of which are as follows:

* * * And if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error, * * *.

The importers thereupon filed their protest with the collector against the assessment of the additional duty in the following terms:

Protest 760600–65.          St. Paul, Minn., *August 6, 1914.*

Hon. Collector of Customs, Port of St. Paul and Minneapolis.

Sir: Please take notice that we hereby protest against your decision, liquidation, and assessment of duty of 7 per cent ad valorem additional under section 3, paragraph I, act of October 3, 1913, on our entry for consumption No. 863, of 16 bales dogskin mats per steamer *Magnolia,* entered January 5, 1914, liquidated July 27, 1914. We claim—

First. That duty should be assessed at the rate of 10 per cent ad valorem only, on a valuation of $4,361 under paragraph 348 of said act, and that we should not be subjected to the payment of 7 per cent additional duty, as found by you, for the reason and on the ground that a manifest clerical error was made by our broker in the preparation of said entry in adopting the value of said merchandise given in the invoice thereof in Tientsin taels, overlooking the value thereof given in gold dollars as the purchase price thereof; and

Second. We claim that said additional duty should not be imposed on us for the reason and on the ground that there is a manifest clerical error in the invoice of said merchandise, in this, to wit: The purchase price thereof is given in gold dollars, which amount is purported to be also represented in Tientsin taels, the reduction to which currency from the value given in gold is erroneous and manifest error, misleading, and produced the error in the entry of said merchandise.

We respectfully ask that the hearing of this protest be transferred to the port of New York to be there considered by the honorable Board of General Appraisers at that city.

Respectfully,

GORDON & FERGUSON,
By C. L. KENCKLER,
*Vice President.*

The protest was submitted to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The present case, therefore, as presented to the court assumes that an undervaluation of the merchandise was made by the importers' brokers in their entry, and that the additional duties thereupon assessed by the collector would be irremediable unless it should appear upon the record that the undervaluation in question arose

from a manifest clerical error. Accordingly the sole issue in the case relates to the alleged manifest clerical error, upon which the importers rest their claim for relief against the additional assessment.

In this behalf the importers contend that the several confused and inconsistent statements of value appearing in the consular invoice obviously arose from a clerical error on the part of the accountant in Hongkong in his attempt to reduce one kind of currency into another upon the invoice, and that the importers' brokers, when they came to enter the merchandise at St. Paul, were misled by that error, and adopted the value as stated in the invoice in taels upon the natural but mistaken assumption that it was the equivalent of the value stated in the same invoice in terms of dollars and pounds, and that in this way the undervaluation actually arose from the manifest clerical error of the foreign accountant.

We can not agree, however, with the latter part of the importers' contention. For even if it be assumed that the discrepancy between the several statements of value appearing in the invoice was a manifest clerical error upon the part of the accountant in Hongkong, it does not follow that the action of the brokers in this country was likewise such an error, or, properly speaking, that it arose from that error. When the brokers came to enter the merchandise with the collector at the port of St. Paul they had the consular invoice before them, and it can not be assumed that they failed to detect the discrepancy between the three several statements of value appearing therein. The discrepancy was substantial and it is reasonable to believe that the brokers observed it when they adopted the last and least of the three values stated in the invoice as the basis of their declaration. Of course this was to their advantage, since it subjected the merchandise to a correspondingly reduced assessment. It is reasonable to believe that this action was the result of discrimination and election between the several statements rather than a mere inadvertence. This view is sustained by the fact that the brokers themselves in making their entry were compelled to convert their net statement in taels into gold dollars in order to find the sum which they declared as the net value of the merchandise. The figure thus ascertained was so substantially inconsistent with the value in gold dollars, as already stated in the same invoice, that it is highly improbable that the discrepancy was simply overlooked.

It is therefore our conclusion that the brokers did not in fact overlook the discrepancy between the several statements of value appearing in the consular invoice, but rather that they consciously elected to stand upon the smallest of the three statements. This, of course, was an error on their part, but it can not be said that their

error was clerical in character. They simply selected an incorrect statement of value which was contained in the consular invoice rather than the correct statement which was also contained therein, both being before them, and made their entry accordingly. They could, of course, have ascertained which was the true statement, and this they should have done. United States *v.* Swedish Co. (4 Ct. Cust. Appls., 223; T. D. 33437); United States *v.* Wyman (4 Ct. Cust. Appls., 264; T. D. 33485); United States *v.* Proctor (5 Ct. Cust. Appls., 44; T. D. 34091); Thompsen *v.* United States (5 Ct. Cust. Appls., 69; T. D. 34100); United States *v.* Nozaki Bros. (5 Ct. Cust. Appls., 286; T. D. 34471); United States *v.* Rice (5 Ct. Cust. Appls., 288; T. D. 34472); United States *v.* Brodie (6 Ct. Cust. Appls., 186; T. D. 35438).

There is another factor in the present case which has not yet been mentioned in this opinion. The record contains an alleged copy of a letter directed by the collector to the Treasury Department asking for instructions in respect to the present matter. In the letter the collector states that he called upon the importers (the appellants here) for their private invoice of the present importations and had been furnished with the same in answer to his request; that the invoice bore date of December 9, 1913, and the same was inclosed to the department for inspection, with the request that the same should be returned as soon as it had answered its purpose with the department, " as the importers desire it returned to them for the files of their office."

The record also contains an alleged copy of the answer purporting to be made by the department to the collector acknowledging the receipt of the private invoice, noting also the fact that this invoice contains the statement that the price paid for the merchandise was the amount of British money stated upon the consular invoice, and directing the assessment of additional duty upon the merchandise.

It might ordinarily be questioned whether such letters would be competent evidence before the board of the facts stated in them, but in the present case the letters seem to have been submitted to the board as evidence without objection, and without objection have been made part of the record of the case as submitted to this court.

The statements contained in these letters therefore are accepted by the court as correct. They fully sustain the conclusion above stated, namely, that the importers' brokers could have informed themselves concerning the real purchase price of the merchandise before making their entry.

The decision of the board sustaining the protest is therefore *reversed.*