BALBACH SMELTING & REFINING CO. *v.* UNITED STATES (No. 2076).[1]

1. CONSTRUCTION, PARAGRAPH I, SECTION III, TARIFF ACT OF 1913—"MANIFEST CLERICAL ERROR."

The entrant of merchandise attempted to state its value in accord with published market quotations, but selected the quotations for the wrong month and so undervalued it. This was not a "manifest clerical error" under paragraph I, section III, tariff act of 1913, and the importer is, therefore, not relieved from the payment of the additional duty provided by the paragraph for undervaluation.

2. ESTOPPEL.

An importer can not be heard to claim that an appraisement based upon his own voluntary entry is null and void for the reason that the entry was not verified as required by the law.

United States Court of Customs Appeals, May 23, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43995.

[Affirmed.]

*Walter E. Hampton* for appellant.
*Bert Hanson*, Assistant Attorney General, for the United States.

[Oral argument May 5, 1921, by Mr. Hampton and Mr. Hanson.]

Before SMITH, BARBER, and MARTIN, Judges; DE VRIES, Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

This appeal arises upon two importations of lead bullion from Mexico under the tariff act of October 3, 1913. Under paragraph 153 of that act the bullion was dutiable at the rate of 25 per cent ad valorem on the lead contained therein, and that rate of duty is not challenged in this case.

The first importation is known herein as lot No. 104 and was imported on July 29, 1915, at the port of New York, from whence it was transported in bond to the subport of Newark, N. J. On September 4, 1915, the importer filed with the collector at the latter port an entry of the bullion, being rewarehousing entry No. N–50, in which it declared the dutiable value of the lead content thereof

---

[1] T. D. 38733.

to be 3.26 cents per pound.    Thereafter, however, this valuation was advanced by the appraiser to 4.14 cents per pound, and this fact was reported in ordinary course to the collector.    By reason of the advance in value, additional duty, so-called, was assessed upon the merchandise under paragraph I, section III, of the act.

The provision thus referred to reads as follows:

And if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry.

   \*     \*     \*     \*     \*     \*     \*

Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback.

The second of the importations in question is known in the record as lot No. 202-3.    It was imported on August 6, 1915, and afterwards, to-wit, on September 20, 1915, the importer made entry of the importation at Newark, N. J., by warehouse entry No. N-67. In the entry it declared the dutiable value of the lead content of the imported bullion to be 3.50 cents per pound.    This valuation, however, was afterwards advanced by the appraiser to 4.14 cents per pound and report thereof made to the collector.    Consequently in this instance also the collector assessed the importation with additional duty under the provision of the act above copied.

No appeal to reappraisement was taken with respect to either of the importations in question.

The importer in due time filed its protest against the additional duties thus assessed upon the merchandise without, however, challenging the primary duties assessed thereon.

The protest rests upon two grounds: First, a claim that the assessment arises from a manifest clerical error alleged to have been made by the importer's attorney when declaring the value of the merchandise in the entries; and, second, a claim that the entries were so defective in form because of a want of due verification thereof, that the attempted advancement of the entered value by the appraiser was null and void.

The protest was submitted to the Board of General Appraisers and was overruled.    The importer appeals.

The two contentions of the importer will be considered in their order.

In reference to the claim of manifest clerical error, it appears that it was the approved custom of importers of such bullion to accept the market reports or quotations appearing in the New York Exchange, a trade publication, and to adopt and set out the values thus reported

in making their entries. And in coming to make out the entries in this case the attorney for the importer undertook to follow that procedure. But by oversight or mistake in examining the files of the journal for the purpose of obtaining the applicable market quotations, the attorney selected in each case the quotations published just one month later than the actual date of each importation. By reason of this error the market value quoted for August 29 was stated in the first entry instead of that for July 29, the correct date; and instead of the value quoted for August 6, the date of the second importation, that for September 6 was erroneously given, all of the same year. In this way it happened by the attorney's error that each declaration of value was less than the actual market value of the merchandise as quoted for the dates when the same was imported. This explanation of course does not appear upon the invoices or entries nor upon any of the official files in the case, but is established by the testimony submitted in behalf of the importer at the trial before the board.

We think that the facts thus proven by the importer do not sustain its claim for relief against the additional duties upon the alleged ground of a manifest clerical error. The mistake of the attorney in examining the files of the journal, and in selecting therefrom the wrong quotations, can not be called a clerical error, and obviously the mistake is not "manifest" since it requires testimony aliunde to make it apparent.

In the somewhat analogous case of Kridel, Sons & Co. v. United States (8 Ct. Cust. Appls., 250, 254; T. D. 37522) this court said:

We may say in respect to the facts just recited that they do not in our opinion present a case for relief upon the ground of "manifest clerical error." The accountant who prepared the invoices was no doubt in error in respect to the insurance charges, war risk, and consular fees, but there is no apparent warrant for holding that his action constituted merely a "clerical" error.—United States v. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437); United States v. Wyman & Co. (Ib., 264; T. D. 33845); United States v. Gordon & Ferguson (6 Ct. Cust. Appls., 410; T. D. 35976). And furthermore it can not be said that the error was a "manifest" one, since it could not be discovered by an examination of the invoice and entry.—United States v. Nozaki Bros. (5 Ct. Cust. Appls., 286; T. D. 34471); United States v. Rice (Ib., 288; T. D. 34472); De Liagre & Co. v. United States (6 Ct. Cust. Appls., 470; T. D. 35989).

See also United States v. Proctor Co. (5 Ct. Cust. Appls., 44; T. D. 34091); Thomsen & Co. v. United States (Ib., 69; T. D. 34100); United States v. Bayersdorfer & Co. (Ib., 99; T. D. 34134); United States v. Bush & Co. (Ib., 127; T. D. 34187); United States v. Brodie (6 Ct. Cust. Appls., 186; T. D. 35438); Meyer v. United States (8 Ct. Cust. Appls., 312; T. D. 37595).

It may be added that there is no suspicion of any fraudulent intent upon the part of the importer or its attorney in this case, nor did any such suspicion exist in the authoritative cases above cited, which

were almost invariably cases arising out of bona fide errors. But such errors do not furnish a basis of relief against the assessment of additional duties in otherwise suitable cases. In order to serve as a ground for relief under the act, an error must be not only clerical in character, but also manifest upon the record before the collector at the time of the liquidation. That is to say, it must be apparent upon the record without the introduction of outside testimony.

As the second ground of its complaint, the importer says that the entries in question were not verified in the manner and form required by the customs regulations (see T. D. 34283; paragraph F, section III, tariff act of October 3, 1913), and that one of the two entries did not even purport to be verified at all. It is contended by the importer that the entries could not lawfully be submitted to the appraiser for appraisement in the absence of a lawful verification of them, and that consequently the appraiser was without authority in the premises and his action in advancing the declared valuations was null and void.

We can not agree with this contention. It was primarily the duty of the importer to execute and complete the verification of the entry papers according to the regulations aforesaid, and it can not now seek affirmative relief upon the ground of its own default. Indeed its entire course of action in the case forbids it from claiming that the entries which it filed in the case were so defective that the action of the customs officers based thereon should be held to be null and void. (16 Cyc., 785, and citations.)

It should be observed that the importer filed its present entries in such terms as it selected, and in that particular this case differs from the Stein case (1 Ct. Cust. Appls., 36; T. D. 31007). No constraint or duress of any kind was exercised by the customs officials upon the entrant in this case. It is intimated by the appellant that it was virtually constrained in practice to adapt the quotations published by the journal above named, and to adopt its computations to certain scales or tables prescribed by the customs service. But even if these contentions were sustained by the testimony, the answer thereto would be found in the fact that the importer has not suffered any loss because of either of these two methods of procedure. For so far as appears the published quotations were correct, as also was the method adopted by the department in computing the values of the lead content of bullion. And furthermore the appraisement as made by the appraiser was correct in fact, and no appeal was taken therefrom by either party. The disputed assessment therefore was not caused in any measure either by the want of a verification of the entry papers, or by any error or mistake of the appraiser, or by any regulation or procedure of the customs service, but solely by the fact that the importer through its agent or attorney unintentionally, but nevertheless actually, understated the value of the merchandise—that

is to say, the lead content of the bullion—when it entered it for duty. The additional duties were imposed because of the undervaluation alone.

Our conclusion therefore is that the decision of the board overruling the protest should be *affirmed.*