(C. D. 983)

MARSHALL FIELD & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 13, 1946)

Joseph F. Lockett for the plaintiff.

Paul P. Rao, Assistant Attorney General (William J. Vitale, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of wool was imported and entered conditionally free under the provisions of paragraph 1101 (b) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. sec. 1001, par. 1101 (b)), at the port of Boston, Mass. The Abbot Worsted Co. entered the wool for warehouse under its special term bond dated May 24, 1940, which insured that any of said wool withdrawn from warehouse would be used in the manufacture of certain articles enumerated in the statute, including carpets or other floor coverings. The statute provides as follows:

\* \* \* If any wool or hair so entered, withdrawn, or transferred under bond is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated above, there shall be levied, collected, and paid on the merchandise so used or transferred in violation of the bond the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer. \* \* \*

It is further provided in said paragraph:

Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; \* \* \*.

It appears from the stipulation of facts upon which the case has been submitted that 29 bales of yarn into which the wool had been converted by the importer, were transferred to the plaintiff herein, charged against plaintiff's bond, and shipped to Leaksville, N. C. The transfer certificate (exhibit D), duly executed, was filed in the office of the collector of customs at the port of Boston, who forwarded it to the collector of customs at Wilmington, N. C., at which port it was duly filed.

The said 29 bales were placed on board a steamer and consigned to the plaintiff herein at Leaksville, N. C. Said steamer went aground and was stranded off the coast of Massachusetts. Subsequently, 21 of the 29 bales, consisting of 5,197 pounds, were jettisoned in an attempt to float the vessel. Thereafter, the 21 bales were salvaged, after damage by sea water, shipped to Norfolk, Va., at the instance of the steamship company, through its agents, and later sold at public

auction. The remaining eight bales were undamaged and were delivered to the plaintiff.

There is no dispute but that the said 21 bales of yarn were used otherwise than in the manufacture of the articles enumerated in said paragraph 1101 (b). In view of that fact, the acting collector of customs at the port of Wilmington demanded and the plaintiff herein paid the sum of $2,416.80, calculated as follows: 5,146 pounds valued at $2,910.32 (the amount received at the auction sale for the merchandise) at 30 cents per pound plus 30 per centum ad valorem as yarn, wholly or in chief value of wool, valued at not more than 60 cents per pound, under the provisions of paragraph 1107 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom (T. D. 49753). This action was taken under authority of the provisions of said paragraph 1101 (b) above quoted, which require that if the wool originally imported "is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated" therein, there shall be levied "the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer * * *."

From a supplemental stipulation of fact it has been agreed by counsel that the yarn included in the 29 bales was manufactured from a blend or mix of wool taken from 6 different importations entered for warehouse under paragraph 1101 (a), and that said importations were covered by 6 different warehouse entries, all of which were originally liquidated as dutiable, pursuant to the provisions of said paragraph 1101 (a). That the collector of customs at Wilmington, N. C., demanded $2,910.32 from the plaintiff herein (said amount representing the alleged value of the merchandise here involved), as a penalty for the alleged violation of the provisions of said paragraph 1101 (b); that upon application of the plaintiff, the Commissioner of Customs abated the said penalty in full; and further, that the transfer certificate erroneously listed plaintiff's bond number as 1145149, whereas the correct bond number applicable is 1245031.

. Plaintiff in this action claims that the sum of $2,416.80 above set forth was illegally collected and gives numerous reasons for the claim, which we set forth below.

It is claimed that the plaintiff is not liable for any duties. If any obligation existed on the part of the plaintiff to pay the duties in question, such obligation was canceled by the action of said plaintiff in reporting to the collector the use or transfer of the merchandise in violation of the terms of the bond, said report having been made within 30 days after plaintiff learned that it would not become owner of the merchandise, which, it is alleged, was a compliance with article 510 (a) of the Customs Regulations of 1937 as amended by T. D. 49658. It is further claimed that if plaintiff is liable for payment of the

duties on the damaged yarn, such duties were not properly assessed under paragraph 1105 of the Tariff Act of 1930 in that there was no examination of the merchandise for appraisement purposes and consequently no liquidation. It is also alleged in the pleadings that if the yarn is dutiable, an allowance should have been made because of the damage, and further, that it should be classified under paragraph 1558 of the Tariff Act of 1930 as an unenumerated unmanufactured article, or as waste, not specially provided for, at 10 per centum under paragraph 1555 of the same act, or as a wool waste, not specially provided for, at 14 cents per pound under paragraph 1105 as modified by the trade agreement with the United Kingdom (T. D. 49753).

At the first hearing held at the port of Boston, Government counsel moved to dismiss the protest on the ground that it was untimely and upon the further ground that the payment of $2,416.80 made by the plaintiff to the collector did not constitute an exaction as contemplated by section 514 of the Tariff Act of 1930. However, in its brief the Government withdrew said motion to dismiss and it is therefore no longer before us.

The Government contends that the collector's action was authorized by the statute and the terms of the bond; plaintiff is liable for duties; the duties were properly assessed under paragraph 1107, *supra;* and damage to yarn does not exempt it from duty.

Plaintiff's claim that it is not liable for any duties whatsoever is based upon the following argument. The yarn here involved was sold to the plaintiff at a price per pound delivered. It was purchased by said plaintiff for use in the manufacture of carpets, rugs, and other floor coverings. Both the plaintiff (the vendee) and the Abbot Worsted Co. (the vendor and importer) had reasonable ground for the belief that the whole 29 bales would reach their destination in due time and in good condition. Eight of the bales did arrive without damage, but 21 which were thrown overboard from the steamship while in transit were not salvaged by the plaintiff nor were they received by it. Under these circumstances, it is claimed that the collector's assessment and collection of duty on the said 21 bales on the theory that the plaintiff had violated the terms of its bond, were in error in that, it is alleged, plaintiff did not in any way violate the terms of the bond.

The particular terms of the bond (exhibit C) to which plaintiff refers are found in paragraph 5 thereof and provide, among other things, that if the principal:

(5) * * * shall, if any of the said wool or hair in its imported or any other form shall be used or transferred for use otherwise than in the manufacture of the articles enumerated in paragraph 1101 of the Tariff Act of 1930, as amended, in violation of the first condition of this obligation, pay all duties which are required under the provisions of the said paragraph 1101, as amended, to be collected on the wool or hair in its imported or any other form so used or transferred;

the obligation shall be discharged. Plaintiff strongly contends that there is no obligation as to the 21 bales because the transfer certificate was signed by plaintiff in the belief that the entire 29 bales would be received by it; that as the goods were sold at a price delivered, title to the yarn did not pass to plaintiff until the goods reached Leaksville, N. C., and the only transfer in law or in fact by which plaintiff became responsible under its bond, was as to the 8 undamaged bales received by it. Further, that the action of the plaintiff in signing the transfer certificate prior to the receipt of the shipment was premature and of no force and effect legally, and that later, when plaintiff received the eight undamaged bales, the transfer certificate and the bond were applicable to that extent. These contentions are based on the premise that plaintiff could not have used or transferred for use the 21 bales which were never received by it, and therefore it did not violate that part of article 510 of the Customs Regulations of 1937, as amended by T. D. 49658, or paragraph 1101 (b), as amended by the Customs Administrative Act of 1938, providing:

* * * Every manufacturer, processor, or dealer who has given a bond pursuant to the provisions of this subparagraph shall report any use or transfer of merchandise in violation of the terms of his bond, within 30 days after such use or transfer, to the collector of customs in whose district the bond is filed; and for failure to so report, such manufacturer, processor, or dealer shall be liable to a penalty equal to the value of the merchandise so used or transferred at the time and place of such use or transfer. Such penalty shall be in addition to the duties above provided for. * * *

Insofar as the penalty under the bond is concerned, as stated above, it has been agreed by counsel that said penalty was remitted.

Irrespective of the question as to when the title to the 21 damaged bales passed, the Government is not concerned with the ownership of the yarn. It is noted that the term used in the statute is "transferred." Whether the transfer consisted of a sale under the law is not here in issue. The Government was not a party to the contract between the Abbot Worsted Co. and the plaintiff. The collector of customs in demanding duties from the plaintiff acted in conformity with the statute (par. 1101, *supra*) which is clear and unambiguous in stating that

* * * Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; * * *.

Plaintiff's bond was so charged both at the time of the use and of the transfer of this merchandise. It is unfortunate that plaintiff assumed this responsibility prematurely. However, that does not alter the fact that when the transfer of the yarn was made, under said paragraph 1101(b), as amended, the transferee became liable for the duties by operation of law.

It was clearly the intent of the legislative body in enacting the

Customs Administrative Act of 1938, as shown by the history of that legislation, to prevent the use of this type of merchandise otherwise than as contemplated by the statute. When the bill, which afterwards became the Customs Administrative Act of 1938, was before the Committee on Ways and Means, a section-by-section analysis thereof submitted by the Treasury Department was incorporated in the record of hearings and appears at pages 130 et seq. of the volume entitled "Hearings Before the Committee of Ways and Means, House of Representatives * * * on H. R. 6738." This report, after enumerating the difficulties arising in the administration of the law as it then stood, made certain recommendations as follows:

The Treasury Department recommends that these difficulties be eliminated from the law without prejudice to the revenue and without restriction or expansion of the tariff privileges now accorded carpet and similar wool and hair, by amendment of the statute as follows:

1. To eliminate the present requirement that proof be furnished within a specific time as to the identified use of particular importations, and to substitute in lieu thereof a system of control by bonds, penalties, and regulations to prevent the use at any time of conditionally free importations otherwise than in the manufacture of imported articles unless full duties are promptly paid.

 *  *  *  *  *  *  *

The amendment submitted is designed to accomplish the results recommended by the Treasury Department.

The only redress of the Government in this case is against the principal or surety on the bond. Plaintiff, by executing and filing the transfer certificate and bond, thereby caused the collector to relieve the Abbot Worsted Co., the importer, of liabilities for duties which might accrue on the merchandise covered by said transfer. Therefore, plaintiff is now estopped from urging against the collector the claim that the transfer and execution of said bond was premature, thereby impeaching its own voluntary act. See *Balbach Smelting & Refining Co.* v. *United States* (11 Ct. Cust. Appls. 84, T. D. 38733).

In answer to the claim of the plaintiff that the duties were not properly assessed in that there was no examination of the merchandise for appraisement purposes and consequently no liquidation, it is sufficient to point out that an examination for appraisement purposes of the yarn in question after it has been put to a use depriving it of free entry under the statute, was impossible inasmuch as at that time it had assumed a new form and use. The provision in paragraph 1101 (b), *supra*, as amended, requires in cases of violation of the bond, the assessment of "regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer." Such merchandise is in a special class and obviously must be given special treatment insofar as the usual procedure is concerned. To hold that the provisions of sections 402, 499, 500, 501, 503, and 505 of the Tariff Act of 1930 relating to designation and

examination of merchandise, appraisement, and notice of advance in value, or a regular liquidation, apply to the instant merchandise, would practically nullify the provisions of said paragraph 1101 in that they would be rendered unworkable. Where, as in this case, the intent of Congress is so clearly indicated, this court will not impute to that body the doing of a useless and vain thing.

It is a well-known rule that where a statute granting a special privilege is concerned, it must be strictly construed and any doubt should be declared in favor of the Government. See *Swan & Finch Co.* v. *United States* (190 U. S. 143, 47 L. ed. 984); *Ring* v. *United States* (5 Cust. Ct. 352, Abstract 44507).

Plaintiff's claims under paragraphs 1558, 1555, and 1105 are overruled for failure of proof. It is also the opinion of the court that the yarn has not been proven to fall under that provision in paragraph 1101 (b), *supra*, which reads:

\* \* \*; but such duties shall not be levied or collected on any merchandise \* \* \* resulting in the usual course of manufacture of such enumerated manufactured articles which cannot be used (with or without further preparation) in the usual course of the manufacture of such enumerated articles, or which is exported or destroyed. \* \* \*.

Although the circumstances of this case bring about an unfortunate result so far as the plaintiff is concerned, it would seem that its remedy is not one which can be enforced against the Government whose agent, the collector, acted within both the spirit and letter of the law. We are therefore constrained to overrule plaintiff's claims and render judgment for the defendant.